OCTOBER AND NOVEMBER TERM, 1884, No. 1.     OCTOBER 6, 1884.

## Craig *et al. v.* Harbison *et al.*

1. In an action of ejectment, it was left to the jury to find whether defendant's ancestor held possession under a gift by parol to him, and therefore adversely so as to give title under the Statute of Limitations, or whether his possession was that of his wife under whom the plaintiffs claimed.

The defendants asked the Court to charge: "The real question for the jury is not what the donor, Moorhead, intended, but what Craig's understanding was, what he claimed and did. Did Craig (the ancestor) consider the gift absolute, and under that idea did he hold adversely to Moorhead for the period of twenty-one years? If he did, that is an end of this question of title, and you must find for the defendants."

The Court charged: "This point is affirmed if the jury is satisfied, from the evidence, that Craig had a right to understand, from the language and acts of Moorhead at the time, that the gift was to him. If he so understood and claimed it accordingly as his own, and not as his wife's, his possession would be adverse, and if continued for the requisite period, the Statute of Limitations would create and protect a title in him." *Held,* not to be error.

2. The alleged donee should not be permitted without evidence or reason to understand the gift was made to him.

3. The language and acts should be such as to satisfy the jury that the conclusion claimed by him was a reasonable one.

Before MERCUR, C. J.; GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.

Error to the Court of Common Pleas of *Westmoreland County.*

[Craig *et al. v.* Harbison *et al.*]

Ejectment brought February 5, 1878, by Nancy Graham, David Harbison, and Rebecca Jane, his wife, in her right, against Sybilla Craig and others, to recover a tract of land in Derry township, Westmoreland county.

At the trial before BLAIR, P. J., the following facts appeared:

In 1828, and prior thereto, Samuel Moorhead was the owner of the land in dispute. He had a daughter, Rebecca, the wife of Alexander Craig. In 1838, Rebecca died, leaving a husband and four children: Nancy, who, in 1850, married James Graham, Elizabeth, John, who died in his minority without issue, and Rebecca Jane, married to David Harbison. Plaintiffs' counsel offered in evidence the will of Samuel Moorhead, dated August 14, 1845, and probated March 10, 1853, by which he devised the land in dispute, as follows: "To my daughter, Rebecca, I will the Trimble farm, and as much of the Cahill farm as will give water in Magee's run."

The plaintiffs then rested.

Defendants' counsel offered in evidence a letter from Samuel Moorhead to Alexander Craig, dated March 20, 1828, and recorded, which was as follows:

"Sir: I understand that you were lately at my house, wishing to see me. I also understand that you have some thoughts of changing your place of residence. I have, for some time past, thought of giving you a mill-seat it is said I have on Magee's run, if it would suit you to improve it. It might be worth your while to come over when a convenient time offers, and I will show it to you, and we can then have more conference on the subject than it would be convenient for me to commit to writing.

Yours, &c.,

SAMUEL MOORHEAD."

The defendants also offered evidence showing that Craig took possession of the land shortly after the letter was written, and continued in possession until September 10, 1869, when he died, leaving children by a second wife, who are, *inter alia*, the defendants in this action.

Andrew Carney, for the defendants, testified, *inter alia:*

"I rented from Alexander Craig, and lived on his farm three or four years. It was from the years 1830 and 1834.

One day I was working at the stable fixing up the fence; Mr. Moorhead came past the stable and went to the house; he was but a little bit in when he, Moorhead, Mr. Craig and Mr. Shields came out; Mr. Craig requested me to fetch the axe and go with them, which I did; went right up the race to the head, or near the head, of the dam; Mr.

[Craig *et'al. v.* Harbison *et al.*]

Moorhead and Mr. Craig were ahead, and I followed; Mr. Moorhead and Mr. Craig were down in the hollow and I was on the hill about two rods above them; Mr. Moorhead then pointed to a hickory; he said that would answer for a corner without going to mark it; the hickory was at the fence on Hill's line; Mr. Moorhead then told me to mark a white oak that I was standing at; I marked the white oak by blazing it; he then came up out of the hollow, walked on the course he wanted the line, and when he came to a tree he got me to mark it; I must have marked a dozen of trees; Mr. Moorhead told me to notch the tree. I saw a stump last Sunday that I thought was the stump of that tree; I am not certain. 'From this line to the ridge what I own I give to Aleck,' he always called Mr. Craig 'Aleck.' I was about turning to go to my work; no one called me back, but just as I was about starting, he spoke these words; I then went to my work and they went to the house. I think it was in '33 that we blazed these trees and marked the corners. I stayed with Mr. Craig about six months after this as a tenant; Mr. Craig continued to live on there."

After Craig took possession of the land and made improvements on it, he exercised acts of ownership by building houses on the land and renting them, cutting timber, and by selling portions of it in the lifetime of Moorhead.

The land was assessed in the name of Alexander Craig, and he paid the taxes and cleared about 100 acres. He built a house, stable, woolen-mill, saw-mill, tenant house, and shop on the land.

S. L. Gorgas, for the plaintiffs, testified, *inter alia:*
"Craig called this Rebecca's farm."

Peter Hamill, for plaintiffs, testified that he bought a certain portion of the tract, taking a deed from Moorhead.

"I got this tract with Mrs. Craig's consent. She was anxious I should buy it. I went to her. Mr. Craig was along when I was talking to her about it. Mrs. Craig claimed this land as her patrimony from her father, when he (Craig) was present." There was other testimony of like import.

The plaintiff presented, *inter alia*, the following point:
*Third.* The gift to Rebecca in this case, though not such an one, perhaps, as a chancellor would decree specific performance upon, as against her father, Samuel Moorhead, is, as to all the world beside, a valid gift, and, confirmed and perfected by his last will and testament, is good to give to her husband an estate for life by the

[Craig *et al. v.* Harbison *et al.*]

courtesy at her death, and to her children an estate of in-heritance.

*Answer.* It is for the jury to say to whom Mr. Moorhead made the gift. The plaintiffs would have a title under the will, upon which they might recover, unless Alexander Craig and those claiming under him have acquired a title under the Statute of Limitations.

Exception. (First assignment of error.)

The defendants presented, *inter alia,* the following points :

*Third.* The real question for the jury is, not what the donor, Moorhead, intended, but what Craig's understanding was, what he claimed and did. Did Craig consider the gift absolute, and under that idea did he hold adversely to Moorhead for the period of twenty-one years ? If he did, that is an end of this question of title, and you must find for the defendants.

*Answer.* This point is affirmed, if the jury is satisfied from the evidence that Craig had a right to understand, from the language and acts of Moorhead, at the time, that the gift was to him. If he so understood and claimed it accordingly as his own and not as his wife's, his possession would be adverse, and if continued for the requisite period, the Statue of Limitations would create and protect a title in him.

(Second assignment of error.)

*Fourth.* The devise to Rebecca Craig, if she had been living at the death of the testator, would have created an *estate tail* in her. She being dead, the devise was void and inoperative.

*Answer.* This point is refused.

(Third assignment of error.)

The Court charged the jury, *inter alia,* as follows :

["The only paper title that has been shown here is the one vested by virtue of the will of Samuel Moorhead in his daughter Rebecca. This would give Rebecca, and her heirs after her death, the right to the land.]

(Fourth assignment.)

["These two plaintiffs, Nancy Graham and Rebecca Jane Harbison, being children of Rebecca Craig, who was the devisee of Samuel Moorhead, have, *prima facie,* a right to recover in this action, unless the defendants have shown some good reason to prevent such a recovery.]

(Sixth assignment.)

"That brings you to the consideration of the important point in this case. The defendants claim that they are

the owners of this land under the Statute of Limitations.
Whether they have acquired a title under the Statute of
Limitations is a question for you to determine under the
evidence; and this may depend largely upon what you
find to have been the nature of the entry by Alexander
Craig upon the land in controversy here.  It is claimed
by defendants that he entered under a gift of Samuel
Moorhead's, as evidenced, in part, at least, by a letter
written by Samuel Moorhead to him, and dated in 1828.
They claim that he went upon this land in pursuance of
the letter and under acts and conduct of Samuel Moor-
head, evincive of a gift on his part to Mr. Craig; and that
since that time he has been in possession of the land, pay-
ing the taxes and making improvements, and continuing
possession from 1828 down to 1869, the time of his death.
The plaintiffs, on the other hand, contend that he and his
wife went into possession upon a gift of Samuel Moor-
head to his daughter Rebecca; and they contend that
Alexander Craig did not claim to own the land in his own
right, but held it in subserviency to the title of Samuel
Moorhead, or in recognition of the gift that had been
made by Moorhead to his daughter Rebecca.  A person
may acquire a valid title to land under the Statute of
Limitations—a title, not only upon which such person
could defend successfully in an action of ejectment
brought against him, but a title upon which he may re-
cover possession.  The object of the statute was repose
and quietness of title; to prevent litigation after the
lapse of a period of twenty-one years, and to make people
feel secure in their title and possession, and thus encour-
age improvements.  When a person, however, sets up a
title under the Statute of Limitations, it is his duty to
establish all the elements necessary to constitute such a
title.  It must appear that he has been in the actual, visi-
ble, distinct, continuous, and adverse possession of the
land for a period of twenty-one years—when the circum-
stances of the case are such that a period of twenty-one
years is the time necessary to confer a title.  The quality
in the possession of Alexander Craig, which is assailed
here, is its want of hostility, as alleged, to the title of
Samuel Moorhead, and those claiming under his will.
We have already said to you that a claim, in order to be-
come a valid claim, or right, under the statute, must be
adverse.  That is to say, the party claiming title under
the Statute of Limitations must be claiming the land as
his own, and not for, or on account of, any other person.
He must claim for himself.  If he does that, and main-

[Craig *et.al. v.* Harbison *et al.*]

tains his possession for the period of twenty-one years, and especially where he makes improvements and pays the taxes, the law would vest a title in him. But when the possession is not adverse, but in allegiance to the title of a superior, or in recognition of the title of somebody else as the owner, then his possession will not operate to confer title upon him as against the true owner of the land. The law deems it the duty of the owner of land to make an entry upon it, or to bring an action for its recovery within the period of twenty-one years when in the adverse possession of another, and upon his neglect or failure to do so, his right to recovery will be determined or at an end. He cannot recover after the lapse of that time ; and there is no hardship in that, where he knows, or has reason to know, that another person is claiming his land adversely ; but, if holding it under or subject to him, it is otherwise, because he would then have no reason to believe that his title was assailed. But when he sees another in the occupancy of his land, appearing to claim the ownership of it, and continuing to exercise acts of ownership over it for the period of twenty-one years, then, unless he moves and asserts his rights within that period, either by making an entry upon the land or by bringing an action of ejectment and recovering it before the statute has closed upon his title, the neglect is his, and his right is lost. What was the nature of the claim that Alexander Craig set up to this land ? Was it adverse to the rights of Samuel Moorhead? Or, in other words, [was Alexander Craig claiming this land for himself ? If so, and he continued his possession—his adverse possession—for the period of twenty-one years, from 1828 up to 1853, the time of the death of Samuel Moorhead, he would have a good title under the Statute of Limitations. If, however, his claim was not adverse, but in recognition of the title of Moorhead, or in recognition of the fact that the gift was to his wife, then his possession would not be adverse, and he could not obtain a title under the Statute of Limitations.]"

(Fifth assignment.)

February 21, 1882, verdict for the plaintiffs for the undivided two thirds of the premises, with six cents damages and costs, upon which judgment was subsequently entered. The defendants thereupon took this writ, assigning errors as above.

*H. P. Laird* and *W. H. Klingensmith* for plaintiffs in error.

[Craig *et al. v.* Harbison *et al.*]

The defendants' third point should have been affirmed, but the court below parried its effects by saying: "If the jury is satisfied from the evidence that Craig had a right to understand from the language and acts of Moorhead, at the time, that the gift was to him." The question was one of adverse holding against Moorhead. The Supreme Court said, in Campbell *v.* Braden, that the real question was not so much what was intended by the donor, as what the donee's understanding was, what he claimed and did. Did he consider the gift absolute, and under that idea did he hold adversely? This was the law as laid down by the Supreme Court, but the court below diverted the attention of the jury from this vital question to another and different question, namely: Whether Craig had a right to understand that the gift was to him. This was in effect to say to the jury: "Craig may have claimed this land adversely for more than twenty-one years, under the belief that Moorhead had made to him an absolute gift, but such claim and adverse holding would not avail him unless you find from the evidence that he had a right to come to such a conclusion." The vital question was whether Craig, in point of fact, held adversely to Moorhead's title from the time of the donation. The court below say that is not the question for the jury, but that the question was whether he had the right to understand that the gift was to him: Campbell *v.* Braden, 15 Norris, 390.

*Edgar Cowan, J. A. Marchand,* and *Hazlett & Williams* for defendants in error.

The jury have found as a fact that the land was given to Mrs. Craig.

What was Craig's position if the gift was intended for his wife? While she lived, he was tenant by the courtesy initiate. At her death, he was tenant by the courtesy of the freehold, and a trustee of the inheritance for the children of his deceased wife. As he had been before that a trustee for her in her lifetime, and as such trustee in possession, he could not in any event acquire in any way a title in himself to the inheritance of his children, either by the Statute of Limitations or otherwise, without first restoring to them the possession of the land and disclaiming his title as tenant by the courtesy.

The law forbade him to violate his trust by setting up an adverse possession, and if he had purchased an outstanding and better title, even that would have inured to the benefit of the children of Rebecca: Hall *v.* Mathias, 4 W. & S., 331; Weaver *v.* Wible, 25 Pa.. 270.

[Greenawalt v. Hamilton.]

OCTOBER 20TH, 1884.—PER CURIAM: An examination of this record fails to sustain any assignment of error. The Court correctly held the evidence sufficient to establish a parol gift of the land to Rebecca V. Craig. The question of claim under the Statute of Limitations was properly presented to the jury. When carefully examined, there is no error in the answer to the third point submitted by the plaintiff in error. Craig should not be permitted, without evidence or reason, to understand the gift was made to him. The language and acts should be such as to satisfy the jury that the conclusion claimed by him was a reasonable one. That is the substance of the answer affirming the point. The jury could not have been misled thereby.

Judgment affirmed.