# Day *versus* The New England Life Insurance Company, Garnishee.

1. A policy of life insurance, payable to the legal representatives of the assured, is not the subject of an attachment execution during the life of the assured.

2. Upon the death of the assured the legal title to the proceeds of the policy instantly vests in the legal representatives, for the benefit of all who are interested in the decedent's estate, whether as creditors or distributees.

3. A judgment creditor of the assured issued an attachment execution against him in his lifetime. The assured died, pending the attachment and before the appearance of the garnishee: *Held*, that the plaintiff was not entitled to recover.

January 13th, 1886. Before MERCUR, C. J., GORDON, TRUNKEY, STERRETT, GREEN and CLARK, JJ. PAXSON, J., absent.

ERROR to the Court of Common Pleas, No. 4, of *Philadelphia county :* Of January Term, 1885, No. 216.

This was an attachment execution issued April 16th, 1884, by O. C. Day against James H. Boud, defendant, and the New England Life Insurance Company, garnishee, on a judgment obtained by him in an action of assumpsit against James H. Boud for $546.08, on October 20th, 1883. The garnishee appeared and pleaded *nulla bona.* A jury was called and the following special verdict was rendered by agreement :

" 1. That the attachment execution was served on garnishees on April 16th, 1884.

" 2. That on April 16th, 1884, James H. Boud, the defendant, held a policy in the garnishee's company, No. 49,715, a copy of which is attached.

" 3. That James H. Boud was a widower on April 16th, 1884, and continued so till the date of his death.

" 4. That James H. Boud died June 8th, 1884, and said policy was outstanding and in full force at that time. No change was made in the beneficiary of said policy.

" 5. That there is due on said policy $1,962.12.

" If the court be of the opinion upon the above facts that

the plaintiff is entitled to recover, then judgment to be entered for the plaintiff, and that there is in the hands of the garnishee $1,962.12; otherwise judgment to be entered for garnishees *non obstante veredicto.*"

The policy of Boud on his own life in the garnishee's company was issued March 29th, 1872, payable " to himself, his executors or administrators, for the benefit of his widow, if any." At the time of taking the policy he was married. He died pending the attachment, and before appearance and plea by the garnishees.

The court directed judgment to be entered for the defendant on the special verdict, which was accordingly done. The plaintiff thereupon took this writ, assigning for error the entering of said judgment.

*F. F. Brightly*, for plaintiff in error.—The 55th section of the Act of 13th June, 1836, enacts that foreign attachments may be levied of debts due and owing at service of the writ, or " at any other time." The 35th section of the Act of 16th June, 1836, enacts that debts may be levied and attached " in the manner allowed in case of foreign attachment." Under these Acts it is well settled that an attachment execution binds everything which comes into the hands of the garnishee until plea pleaded: Benners *v.* Buckingham, 5 Phila., 68; Mullen *v.* Maguire, 1 W. N. C., 577.

The policy of insurance in this case is payable to " James H. Boud, his executors or administrators, for the benefit of his widow, if any." He left no widow, and it became payable as if such beneficiary clause did not exist, viz., to " James H. Boud, his executors or administrators."

When James H. Boud died, therefore, on June 8th, 1884, this insurance money became to all intents due him, and being so, it was a debt " due and owing " before plea pleaded, and was bound by this attachment.

It is further contended that the policy of insurance was itself attachable. A policy of insurance is a chose in action for the payment of money at a future day. " It is a mere contract to pay a certain sum of money on the death of a person, in consideration of the due payment of a certain annuity for his life." Baron PARKE cited by REED, J., in Elliott's Appeal, 50 Pa. St. Rep., 75, a check payable at a future day is attachable: Fulweiler *v.* Hughes, 17 Pa. St. Rep., 440 ; Walker *v.* Gibbs, 2 Dall., 211 ; Franklin Fire Ins. Co. *v.* West, 8 W. & S., 350 ; Coates *v.* White, 39 Leg. Int., 60 (THAYER, P. J.) And a promissory note not yet due : Kieffer *v.* Ehler, 18 Pa. St. Rep., 388 ; Kent *v.* Nav. Co., 1 Tr. & H., § 1183; Day *v.* Zimmerman, 68 Pa. St. Rep., 72. So is rent falling due after ser-

vice of writ: Derham *v.* Berry, 5 Phila., 475. It is a chose in action belonging to the assured : Keller *v.* Gaylor, 3 Ins. L. J., 303 ; Bliss on Ins., 526.

Policies are securities for money, valuable choses in action, which can be sold at public or private sale, and are included in the general words personal estate or property: Elliott's Appeal, 50 Pa. Stat., 80 ; Stokoe *v.* Cowan, 7 Jur. N. S., 901. The proceeds of a policy on testator's life pass under a bequest of " any money he might die possessed of, or which might be due and owing to him at the time of his decease ": Petty *v.* Willson, 4 L. R., Ch. Ap., 574; McCord *v.* Noyes, 3 Bradf., 139 ; Bliss on Ins., 540. A policy passes under a bequest of " debts and debentures ": Phillips *v.* Eastwood ; Lloyd and G. Cas. temp., Sugd., 270. A life policy, while the insured is still alive, may be reached and made to apply on a debt due from the owner: Bliss on Life Ins., 592 ; citing Anthracite Ins. Co. *v.* Sears, Mss. Sup. Court of Mass. The attachment is an equitable assignment of the thing attached ; a substitution of the plaintiff for the defendant, to the latter's rights against the garnishee. STRONG, J.: Reed *v.* Penrose, 36 Pa. St. Rep., 229. It puts the attaching creditor in the same relation to the garnishee as was occupied by the defendant before the attachment was laid : Fessler *v.* Ellis, 40 Pa. St. Rep., 248 ; Manigle's Estate, 32 Leg. Int., 83 ; Selfridge's Appeal, 9 W. & S., 55. He stands " in the shoes of the defendant": Patten *v.* Wilson, 34 Pa. St., 299 ; Strong *v.* Bass, 35 Id., 333.

*Samuel C. Perkins* and *Lewis Stover*, for defendants in error.—An attachment execution does not bind everything that comes into the garnishee's hands until plea pleaded. It binds everything attachable that comes into his hands after the service of the writ.

A test as to what may be attached was given by this court in the case of Bunn's Appeal, 14 W. N. C., 193. GREEN, J., says, at page 199 : " In order to sustain an attachment in execution there must be a debt due from the garnishee to the defendant in the judgment which may be payable at the time of the service of the writ, or may become payable subsequently. This debt must be at least a cause of action. If it be not, so that it cannot be enforced by the defendant against the garnishee, it certainly cannot be converted into a cause of action by the mere consideration that an attachment has issued instead of a summons in a common law action."

The distinction between a policy of insurance and a promissory note, draft or check, is this: Here no debt arises until the conditions are performed ; there a debt exists but payable

in .future. The garnishee here may safely answer that he owes defendant no debt or demand ; there he must admit a present debt though payable in future, which of course will be bound by the attachment. But here the execution finds no goods, and of course must be returned " *nulla bona.*" In the case of Peebles *v.* Meeds, 96 Pa. St., 150, where an attachment was laid on a due bill for $2,000, payable in board, GORDON, J., says, page 154 : "Whether or not a claim such as this is attachable is the question for our solution. We think .it is not. It is not a debt due at the present, or which will become due in future, so that no judgment can be had against the garnishees in this form."

Mr. Justice GREEN delivered the opinion of the court, February 15th, 1886.

The wife of the assured having died during his life, the fund attached may be regarded as if it were due upon an ordinary policy payable upon the death of the assured. This policy was not in any circumstances payable to the assured himself, nor to any one during his life. It was only payable after his death, and as it was never assigned it was payable only to his executors or administrators. No title to have the fund ever existed except in the legal representatives of the deceased. No action could by any possibility have been maintained for the recovery of the money by the deceased in his lifetime, nor by any other persons except upon the condition that he had first died. His death was simply and absolutely indispensable to the existence of any right of action on the policy. More than this, if the assured had voluntarily surrendered the policy at any moment before his death, or if it had become forfeited by breach of condition, no right of action would ever have existed, even in his legal representatives. Still more, at no time during his life could the proceedings upon the attachment have been brought to final judgment in favor of the attaching creditor, because it could never be known until the death of the assured had actually transpired whether any money would become due upon the policy. The law regarding attachments contemplates, and provides for, actual proceedings resulting in judgment for one party or the other, not for an entire suspension of proceedings for an indefinite and uncertain period. A policy effected at the age of twenty-one, payable at death, might not become payable in fact for sixty or more years. Can it be that an attaching creditor upon such a policy could demand the judgment of a court against the company as garnishee, payable at the death of the assured, or as an alternative claim that the court should suspend all proceedings until the assured shall die ? It is in-

credible. No judgment could be given in advance of death because no court could possibly know for what amount the judgment should be rendered, nor whether any amount would ever become due. On the other hand, an order to suspend proceedings during the life of the assured is so entirely at war with the whole theory of legal process to enforce remedies, so unheard of in the practice, that it has neither precedent to sustain it nor any sound principle to sanction it.

But apart from these objections, which seem to be insuperable, at the very first moment when the money does become due on such a policy as this it is due, and belongs to, the legal representatives of the assured, and is of course assets in their hands for the payment of all his debts. There is not a single instant of intervening time after his death, and before the rights of his representatives accrue, during which a previously issued attachment can fasten upon the fund upon the theory that it is his. While it is his in the sense that his representatives may have it derivatively from him, their title to it is peculiar to themselves, and immediately and necessarily enures to the benefit of all who are interested in the decedent's estate, whether as creditors or distributees.

It is argued that a life policy is assignable by the assured, and therefore ought to be regarded as attachable as his. The argument is not sound, regarded even as a general proposition, because things are not necessarily attachable because they are assignable. Almost every form of property or right, whether *in esse* or *in posse*, is assignable. But many things are not attachable though they are in present existence. Thus wages of labor and money in the hands of an officer of the law are not attachable, the one by force of a statute and the other under the decisions of the courts. So a balance of money due to a defendant under the exemption law, and in the hands of his attorney, is not attachable : Gery *v.* Ehrgood, 7 Cas., 329 ; nor an executor's commissions : Adams's Appeal, 11 Wr., 94 ; nor the fees due a public officer : Hutchinson *v.* Gormley, 12 Id., 270 : nor money granted by the state for losses during the war : 5 P. F. S., 430. Other cases might be mentioned, but it is unnecessary : Deginther's Appeal, 2 Norr., 337, was cited, but it has no application. It decided nothing more than that the husband, as a distributee of his wife's estate, was entitled to his share of the proceeds of a policy effected by her on his life, and she having died first his representatives were entitled to receive his share upon his death. The decision was in entire conformity with the principles above stated.

Judgment affirmed.