## O'Boyle v. Kelly, Appellant.

*Ejectment—Parol gift of land—Adverse possession—Insufficient evidence.*

1. The burden is always upon the party claiming by adverse possession to show when his adverse holding began.

2. Where a defendant in ejectment claims title under an alleged parol gift from his father and also by adverse possession, and the evidence is insufficient, by reason of the statute of frauds, to prove the gift, the defendant must show that his original entry was made in the honest belief that his father had given him the land in fee, and to establish this he must prove facts sufficient to sustain a finding that he had reason to believe that his father had given it to him as his own.

3. When the evidence is not sufficient to show that the original entry is adverse in such sense, the rule applies that when the possession of one person is shown to have been once in subordination to the title of another, it will not be adjudicated afterwards adverse without clear and positive proof of its having distinctly become so; for every presumption is in favor of the possession continuing in the same subordination to the title and the proof must reach so far as to show that the adverse possession assumed was brought to the knowledge of the holder of the title. The holder of the record title must have actual notice brought home to him of the claim, and the statute does not begin to run until the possession becomes adverse by some decisive acts or declarations, and such acts must be equivalent to an actual ouster.

4. In an action of ejectment to recover certain land, brought by the holders of the record title, the defense was that plaintiffs' predecessor in title had conveyed the land in 1873, by parol, to a son, who then and there entered upon the land and improved the same and held possession until his death in 1910, when he devised it to defendant. On the trial, the evidence proved insufficient in law to support the defendant's averment that her father entered under a parol gift, and the evidence of title by adverse possession was submitted to the jury which found a verdict for plaintiff, upon which judgment was entered. *Held,* that the verdict was justified by the evidence.

Argued Feb. 23, 1915. Appeal, No. 305, Jan. T., 1914, by defendant, from judgment of C. P. Lackawanna Co., March T., 1911, No. 954, in case of Michael O'Boyle,

**14**        O'BOYLE *v.* KELLY, Appellant.

John A. O'Boyle, James J. O'Boyle, Margaret Clevin, Ann Duggan and Nettie Healey v. Jane Kelly and William Kelly. Before BROWN, C. J., POTTER, STEWART, MOSCHZISKER and FRAZER, JJ. Affirmed.

Ejectment to recover lands in Lackawanna County. Before NEWCOMB, J.

The opinion of the Supreme Court states the facts.

The following questions were submitted to the jury and answered as follows:

1. Did Frank J. O'Boyle go into possession by consent of his parents with the mutual understanding that he was to have the free use of the property as a building site for the location of his business, but without any definite understanding as to how long such use should continue? Answer: Yes.

2. Did he at any time thereafter do or say anything which would bring home the unequivocal notice to his mother that he claimed to be the owner of the property? Answer: No.

3. If so, in what year was it and what was the occasion? Answer: ———.

The trial judge thereafter directed a verdict for plaintiff upon which judgment was entered. Defendant appealed.

*Errors assigned* were rulings on evidence and instructions to the jury.

*A. A. Vosburg,* with him *John P. Kelly,* of *O'Brien & Kelly,* for appellant.

*R. W. Archbald,* with him *C. A. Battenberg,* for appellees.

OPINION BY MR. JUSTICE MOSCHZISKER, March 29, 1915:

The plaintiffs sued in ejectment to recover a piece of

land with a building thereon; they averred and proved that the property was originally owned in fee simple by their father, Michael O'Boyle, (the common source of title); that, July 12, 1877, Michael O'Boyle and Mary, his wife, conveyed the property to Michael O'Boyle, a son, who forthwith reconveyed it to Mary O'Boyle, his mother; that, May 7, 1910, Mary O'Boyle died, testate, and devised the real estate in question to her son, Frank J. O'Boyle, for life, and upon his death to the plaintiffs in fee; that Frank J. O'Boyle died December 3, 1910, whereupon the right of possession vested in the plaintiffs. The defendants answered that, July 15, 1873, Michael O'Boyle, the father, "by a certain parol agreement," conveyed the land described in the writ to Frank J. O'Boyle, his son, in fee, "and then and there delivered possession of the same"; that Frank J. O'Boyle "then and there entered upon said land and improved the same by building a certain two-story store and dwelling house ......and held possession of the same until the day of his death, to wit, on the 3d of December, A. D. 1910"; that Frank J. O'Boyle devised the property in fee to his daughter, Jane Kelly, one of the defendants and the wife of the other defendant; further, that Frank J. O'Boyle, from the time of his entry into possession to the day of his death, "maintained actual, open, notorious, exclusive, hostile and continuous possession....... against all and every person or persons whatsoever"; and that immediately thereafter Jane Kelly, the defendant, entered upon the property and has ever since held and maintained the same character of possession. When the case came to trial, the evidence proved insufficient in law to support the defendants' averment of title by gift. The issues of fact in connection with the assertion of title by adverse possession were submitted to the jury and found against the defendants; they have appealed, and assign nineteen errors, but owing to the view which we take of the case, it is not necessary to discuss any of these in detail.

In its broad outlines, the case at bar is strikingly like Johns v. Johns, 244 Pa. 48, where our Brother STEW- ART but recently stated the governing principles applicable to the trial of such causes, which may be summarized thus: "The burden is always upon the party claiming by adverse possession to show when his adverse holding began, for without such initial point established, there can be no telling whether, if it existed at all, it continued for the statutory period." Where a defendant in ejectment claims title under an alleged parol gift from his father, and also by adverse possession, and the evidence is insufficient, by reason of the statute of frauds, to prove the gift, the defendant must show that his original entry "was made in the honest belief that his father had given him the land" in fee, and to establish this he must prove facts sufficient to sustain a finding that he "had reason to believe that his father had given it to him as his own"; for, "if he had, it may be assumed that his entry was in consequence (of the gift), (whereas), if he has shown no warrant for such belief, his entry will be presumed to have been under a license from his father, and therefore in subordination and allegiance to the latter's superior title." "In considering the sufficiency of the evidence to warrant a conclusion favorable to the defendant on the (issue as to whether his entry 'was made in the assertion of a belief, arising on facts and circumstances warranting such belief, that the land had then been given to him by his father'), we are to have regard to a period antecedent to the entry into possession"; and "what subsequently occurred would be without relevancy to this particular issue." When the evidence is not sufficient to show that the original entry is adverse in the sense already indicated then the rule applies that "When the possession of one person is shown to have been once in subordination to the title of another, it will not be adjudicated afterwards adverse without clear and positive proof of its having distinctly become so;

for every presumption is in favor of the possession con-
tinuing in the same subordination to the title......,
and the proof must reach so far as to show that the ad-
verse possession assumed was brought to the knowledge
of the holder of the title." The holder of the record title
must have actual notice brought home to him of the
claim of adverse possession, and "the statute would not
begin to run until the possession became adverse by some
decisive acts or declarations......done or made in such
a manner, and under such circumstances, as to leave
no doubt in the mind of the jury that they were brought
home to the knowledge of (the holder of the record
title)." "In brief, the rule requires that the specific
acts or declarations relied upon as showing a change
from the original tenure must be the equivalent of an
actual ouster," and "the statute will only begin to run
from the date when such specific acts or declarations
were made......and the burden is on the defendant to
show that the adverse possession he claims began twenty-
one years before the action was brought." Finally,
"Where a party relies on the statute of limitations, as
giving him a positive title, one with which he can suc-
cessfully assail even the holder of the legal title in pos-
session, he ought to be held to show all the elements
constituting it, conjoined and united in his hands; and
that he, or those under whom he claims, entered into
the possession of the premises, claiming the same as and
for his own property, and that as such he has held actual,
adverse, continued, visible, notorious, distinct, and hos-
tile possession thereof, for the full period of twenty-one
years......A court should, in case of such a title, see
that there is evidence to go to the jury on all these
points. If it be wanting as to any of them, then an es-
sential of title is wanting, and the duty of the judge is
plain. He should instruct the jury that there is not suf-
ficient evidence to entitle the plaintiff to recover."

When the rules and principles of law just cited are
applied to the evidence in the present case, it is apparent

that the proofs depended upon to show title in the defendant (considering both those admitted and rejected) were so inadequate that the trial judge would have been entirely justified in giving binding instructions for the plaintiffs. As stated in the opinion of the learned court below, "The claim of effective gift being abandoned, that of adverse possession at the outset could only be supported by proof of facts sufficient to warrant a reasonable belief on Frank's part that the father then intended to part with his ownership. What is there in the evidence to which such effect can be given? When and where, and on what occasion, prior to the alleged entry, does the evidence bring father and son together and in communication with each other upon terms calculated to induce such well founded belief? What happened afterwards can be of no value as corroboration on that point unless there was something to corroborate. True, the relation of the parties, the intended purpose of the improvement then added to the homestead, and the attendant circumstances might, in the mind of the son, justify some expectation of ultimate ownership; but that is wide of the mark, which calls for a well founded belief in the present acquisition of ownership and that he was then and there entering as owner, in order to make it an adverse entry......This record will be searched in vain for anything to support such an inference; that being so, the presumption would be that he entered by permission, and that status would continue until something occurred which would serve to give actual notice to the owner that he claimed in his own right......When the possession of one person is shown to have been in subordination to the title of another, the presumption is that it so continued and proof sufficient to overcome the presumption must show that the holder of the record title had express notice that the party in possession was claiming adversely." The evidence depended upon was insufficient to meet the burden assumed by the defendants when they undertook to

prove title by adverse possession, and hence the alleged errors in the trial are of no importance and need not here be discussed. In addition to the cases cited in Johns v. Johns, supra, see Graham v. Craig, 81½ Pa. 459; Craig v. Craig, 8 Sadler 357; and Craig v. Harbison, 4 Penny. 488; the latter being erroneously referred to in Johns v. Johns, supra, at page 51, as "Greenawalt v. Hamilton."

The assignments of error are dismissed and the judgment is affirmed.