Opinion by
 

 Kellee, P. J.,
 

 This was an action of assumpsit brought by Laura Fulforth, administratrix,
 
 [1]
 
 &c. of Graham Fulforth, deceased, against Prudential Insurance Company of America, hereinafter called the Company, on three industrial policies
 
 [2]
 
 issued by it insuring the life of said Graham Fulforth, to wit:
 

 (1) No. 67 333 051 for $500 issued June 21, 1926.
 

 (2) No. 105 861 787 for $215 issued April 6, 1936.
 

 (3) No. Ill 687 181 for $500 issued January 24, 1938.
 

 All of the policies were payable on the death of the insured to his executor[s] or administrator [s] “unless payment be made under the provisions” of the “Facility of Payment” clause following.
 

 As will be noted, the first two policies were issued before the effective date of the Act of May 21, 1937, P. L. 769, defining industrial insurance, providing uniform policy provisions and prohibited policy provisions for industrial insurance contracts. Neither of them— in accordance with the practice of the Company with respect to industrial insurance contracts prior to the Act of 1937 — made any provision for the appointment of a
 
 beneficiary
 
 other than the executor or administrator. The third policy, which was issued about five months after the Act of 1937 went into effect, in accordance with the provisions of section 420D(d) of the Act,
 
 *519
 
 provided that a beneficiary could be
 
 added by an endorsement, on the request of the insured,
 
 to whom payment would be made, on surrender of the policy and due proof of the death of the insured within 60 days thereafter ; otherwise payment would be made to the executor or administrator “unless made under the Facility of Payment” provision of the policy.
 

 All of the policies, however, contained the “Facility of Payment” clause, referred to above, which in the first two policies read as follows: “Facility of Payment.— It is understood and agreed that the said Company may make any payment......to any relative by blood or connection by marriage of the Insured, or to any person appearing to said Company to be equitably entitled to the same by reason of having incurred expense on behalf of the Insured, for his or her burial, or for any other purpose, and the production by the Company of a receipt signed by any or either of said persons or of other sufficient proof of such payment......shall be conclusive evidence that such payment......has been made......to the person or persons entitled thereto, and that all claims under this Policy have been fully satisfied.”
 

 The insured died on December 5, 1938. This action was brought on May 24, 1939.
 

 The Company defended the action on the following grounds:
 

 1— As to policy (1), that it had been surrendered by the insured to the Company on January 25, 1938, and the Company’s check for $123.76, the full cash surrender value, had then been paid him.
 

 2— As to policy (2), that following the death of the insured, his sister, Helen F. MacKinnon, who held said policy, had presented a claim to the Company, stating that she had paid all the premiums on said policy and was responsible for the burial expenses of the insured, and had incurred other expenses on his behalf of ap
 
 *520
 
 proximately $315, for which she had not been reimbursed; and that the Company had elected, under the “Facility of Payment” clause to pay her the amount of said policy, $215, and had done so on December 28, 1938 [nearly five months before letters of administration were issued to the plaintiff], by its check on the Clifton Heights National Bank No. A1022, and said policy had been surrendered by her to the Company.
 

 3 — As to policy (3), the Company admitted that $500 was due to the person legally entitled thereto; but averred that Helen F. MacKinnon, the insured's sister, who held the policy in her possession, had on the death of the insured, presented a claim for its proceeds; that inasmuch as the policy was not then incontestable, the Company entered upon an investigation and during the time required therefor the plaintiff obtained letters of administration and also made claim for its proceeds; it declared its intention to apply for an interpleader issue as to such proceeds, $500, for its protection against double liability and the expense of defending two actions.
 

 Shortly thereafter, the defendant company filed its petition in the Municipal Court, under the Rules of Civil Procedure Governing Interpleader by Defendants, promulgated by the Supreme Court, (Eules 2301-2325), setting forth that this action had been brought against it by Laura Fulforth, administratrix, &e. to recover the proceeds of Policy (3) and that Helen F. MacKinnon claimed title to said policy by gift and delivery from the insured, and in consideration of monies advanced by her to him and for his burial expenses; it averred that $500 was due to the person legally entitled to the proceeds of said policy and that it had no interest therein and was ready to pay said sum of $500 to such person as the court might direct; and it prayed that Helen F. MacKinnon, the claimant, might be added to the record as a party plaintiff
 
 as respects said policy (8),
 
 in accordance with said Rules, and be required to interplead
 
 *521
 
 with the original plaintiff as to which of them was entitled to the proceeds' of said policy (3).
 

 While no formal order for interpleader was entered by the court as required by Rule 2306, the parties proceeded as if such an interpleader had been directed, and Helen F. MacKinnon, as claimant, filed her statement of claim wherein she set forth,
 
 inter alia
 
 that said policy (3) was issued, at her request, by the defendant, through its agent at Darby, Charles H. Palmer; that she had paid all the premiums due or paid under said policy; that the policy was delivered to her by defendant’s agent and kept by her in her possession until surrendered by her to defendant in making claim for its proceeds; that when the policy was delivered to her, and consistently since, she had been informed by said agent and by John F. Devanney, assistant superintendent of defendant’s office at Darby, that she was entitled to and would be paid the proceeds of said policy; that the insured during his lifetime “recognized ...... that [she] Helen Fulforth MacKinnon was the owner of this policy and was entitled to its proceeds”; and that relying upon said representations she had paid all the premiums on said policy without having her brother specify that her name be endorsed upon said policy as designated beneficiary; that she had incurred liability in the amount of $403.50 for the funeral expenses of the insured and $35 for his grave, after being informed by said Laura Fulforth that the insured was dead and that she, the claimant, should take care of the body, and had advanced approximately $300 additional for premiums paid on this policy, medical expenses, room rent, room furnishings and other debts of the insured, in reliance on the said policy.
 

 Answers were duly filed by the plaintiff and defendant respectively to her statement of claim, and the case came on for trial before a jury.
 

 As can be seen the issues were somewhat complicated. As to policies (1) and (2) the issue was between the plaintiff administratrix and the defendant. As to
 
 *522
 
 policy (3), the issue was between the plaintiff administratrix and the claimant plaintiff, and the burden was on the claimant to establish a gift or oral assignment of the policy to her, expressive of an intention on the insured’s part that she should receive the proceeds of the policy on his death. In an endeavor to simplify the case for the jury, the court went somewhat beyond the procedural limits marked by our established court practice.
 

 Apparently some preliminary conference at side-bar took place between the court and counsel — for in the original notes of testimony
 
 [3]
 
 (p. 149) appears the following:
 

 “The Court: You want special findings in this case or a general verdict?
 

 . “Mr. Van Dusen [Counsel for claimant]: Special questions, your Honor. We agreed at the start of the trial.” Just what the terms of this agreement were, it does not appear; but later on in the case, after the jury had returned their answers to the special questions submitted to them, the court said: “We have now the special findings of the jury, and in accordance with our agreement, I shall now enter a general finding on the issues of the case and dispose of the points reserved.” And after disposing of a preliminary question raised by Mr. Shoyer, counsel for defendant,
 
 [3]
 

 [4]
 
 no objection was made by any of the parties, or their counsel, to the course of action said to have been agreed upon.
 

 
 *523
 
 Tlie established practice in Pennsylvania with respect to jury trials in civil actions admits of only three forms of verdict:
 

 1— A general verdict in favor of plaintiff or defendant; or in interpleader issues, where defendant admits full liability on the contract but does not pay the fund into court, in favor of (1) the original plaintiff or (2) the claimant plaintiff, as against the defendant, and in favor of the defendant as to the unsuccessful “plaintiff.”
 

 2— A general verdict, as above, with special findings, or answers to special questions of fact submitted to the jury by the court.
 
 [5]
 

 3— A special verdict.
 

 A special verdict is where the jury find
 
 all
 
 the material facts in the case, disputed as well as undisputed, leaving the ultimate decision of the case on those facts to the court:
 
 Wallingford v. Dunlap,
 
 14 Pa. 31, 33;
 
 Standard Sewing Machine Co. v. Royal Ins. Co.,
 
 201 Pa. 645, 647-8, 51 A. 354;
 
 Kelchner v. Nanticoke Boro.,
 
 209 Pa. 412, 416, 417, 58 A. 851;
 
 Panek v. Scranton Ry. Co.,
 
 258 Pa. 589, 593, 102 A. 274. It is very similar to a case stated, except that the facts are found by the jury instead of agreed to and stated by the parties; and, like a case stated, the court in pronouncing judgment
 
 [6]
 
 cannot go beyond the facts found in the special verdict and infer anything not there found. What is not found is presumed not to exist. If the facts found are not sufficient to support a judgment, the case must be tried again.
 

 The subject is discussed in Moschzisker’s Trial by Jury, section 341, and in 6 Standard Pennsylvania Practice, pp. 176 and 218-222, and in addition to the cases cited therein, reference may be had to 38 Yale’s Penn
 
 *524
 
 sylvania Digest, Trials, section 347. There was no “special verdict” in this case.
 

 However, in
 
 Panek v. Scranton Ry. Co..,
 
 snpra, reference was made to a practice used by the late Judge Newcomb in Lackawanna County, and apparently sanctioned by the Supreme Court in
 
 Union Trust Co. v. Gilpin,
 
 235 Pa. 524,, 84 A. 448 (see also
 
 O’Boyle v. Kelly,
 
 249 Pa. 13, 94 A. 448, where the same course was taken), where the trial court preliminarily submitted certain questions of fact to the jury and after receiving their answers
 
 directed a general verdict
 
 for the plaintiff on the facts so found by the jury.
 

 To justify the practice adopted by Judge Newcomb as above, the parties should formally
 
 agree
 
 to that method of submission. See 258 Pa. p. 594. And a general verdict should be rendered in addition to the answers to the questions submitted, just as in the case of special findings above mentioned- See 6 Standard Pennsylvania Practice pp. 176 and 222-224.
 

 The court below' did not wholly and strictly follow any of these recognized practices. After discussing the evidence in its charge to the jury, it submitted three questions of fact to the jury, one for each policy.
 

 As to policy (1) the question was: Did the Prudential Insurance Company of America pay to Graham Fulforth, the insured, the sum of $123.76 the cash surrender value of the Policy No. 67 333 051? The jury’s answer was, Yes.
 

 As to policy (2), the question was: Did the Prudential Insurance Company of America in good faith pay to Helen F. MacKinnon the sum of $215 under the Facility of Payment clause of Policy No. 105 861 787? The jury’s answer was, Yes.
 

 As to policy (3) the question was: Was Policy No. Ill 687 181 taken out by the Insured, Graham Fulforth, with the expressed intention that Helen F. MacKinnon shall [should] in the event of his death receive the pro
 
 *525
 
 ceeds of the policy, and was the policy delivered to her, either by the Insured, or by the agent, with the consent of the Insured, with the intention of giving her the right to the proceeds of the policy in the event of the death of the insured, Graham Fulforth? The jury’s answer was, Yes.
 

 These answers were apparently considered by the court as in the nature of a verdict (notes of testimony p. 191) but were not recorded or filed as a verdict. No general verdict was asked of or rendered by the jury.
 

 The parties had submitted certain points for charge to the court. The court, in a colloquy with counsel for defendant, stated that it had
 
 reserved
 
 these points, but there is no other record of any reservation.
 

 The notes of testimony show that after the jury had returned the answers and apparently been dismissed, the court and counsel met in the judge’s chambers at 5:00 p.m., and the court said, “We have now the special findings of the jury, and, in accordance with our agreement, I shall now enter a general finding on the issues of the case and dispose of the points reserved.
 

 “In the issue of Laura Fulforth, Administratrix of the Estate of Graham Fulforth, deceased, plaintiff vs. Prudential Insurance Company of America, I affirm the [defendant’s] point submitted, which was as follows:
 

 'Under all the evidence and the pleadings in this case your verdict should be for the defendant.’
 

 And I am therefore entering a finding for the defendant, and give the plaintiff an exception to the entry of this finding.
 

 “The Court: Now as to the issue in which Helen F. MacKinnon is the Claimant and the Prudential Insurance Company of America, defendant, I affirm the [claimant’s] 3rd point submitted for charge, which was as follows:
 

 'Under all the evidence you must return a verdict for the claimant, Helen Fulforth MacKinnon, in the amount of five hundred and thirty dollars.’
 

 
 *526
 
 “In the interpleader issue between Helen F. MacKinnon, claimant, and Laura Fulforth, Administratrix, against Prudential Insurance Co. of America, defendant, the Court finds for the claimant, Helen F. MacKinnon, in the sum of $580. And the Court will allow an exception to the plaintiff, and to' the defendant., for the affirmance of this point and the entry of the findings.
 

 “And as to the points submitted on behalf of the plaintiff, I decline all the points, and allow the plaintiff an exception to each one.”
 

 The court might well have directed a verdict for the defendant on the issues involved in policy (2), for there was nothing in the evidence that would have supported a verdict for the plaintiff on that policy:
 
 Beard v. J. Hancock M. L. Ins. Co.,
 
 326 Pa. 430, 192 A. 411;
 
 Thomas v. Prudential Ins. Co.,
 
 148 Pa. 594, 24 A. 82;
 
 Brennan v. Prudential Ins. Co.,
 
 170 Pa. 488, 32 A. 1042. The
 
 claimant
 
 was not a party to that issue, and the court properly so ruled. See also,
 
 Volkwein v. Volkwein,
 
 146 Pa. Superior Ct. 265, 270, 22 A. 2d 81, 84.
 

 The evidence on policy (1) had to be submitted to the jury, but was so preponderant in favor of the defendant that a verdict for the plaintiff on that policy on the evidence submitted should not be! allowed to stand.
 

 The evidence in the interpleader issue on policy (3) was for the jury. We find no error in admitting the evidence of the claimant, nor such material variance between the allegata and probata of the claimant as to require a directed verdict for the plaintiff. The 8th paragraph of claimant’s statement was more a conclusion of law than a statement of fact. It should have averred the facts relied on by her to support the legal conclusion that “Graham Fulforth, the insured, during his lifetime recognized that Helen Fulforth MacKinnon was the owner of this policy and was entitled to its proceeds.” A
 
 court,
 
 in its opinion, may state as a conclusion from the facts in evidence that A. B.
 
 recognized
 
 
 *527
 
 the ownership of C. D. in certain property, but it is not a good averment of fact in a pleading.
 

 But the plaintiff did not object to it preliminarily and there was no doubt as to the issues of fact involved, viz., whether policy (3) was taken out on the life of Graham Fulforth at claimant’s request, on the surrender by him of policy (1) for its cash surrender value, in order to reimburse her for expenses paid or assumed by her for him or likely to be paid by her; and that at the time, he stated to her and to the agent, or to one in the presence of the other, that she was to receive the proceeds in the event of his death; that she paid the premiums on the policy, and the policy was delivered to her by the insured, or by the agent with the consent of the insured, with the intention of giving her the right to the proceeds in the event of his death. See
 
 Scott v. Dickson,
 
 108 Pa. 6, pp. 15,16.
 

 The evidence was ample to support a verdict in the claimant’s favor, and if the jury had rendered a general verdict on this policy in her favor, in connection with its special finding No. 3, we would have no hesitation in upholding a judgment entered on it. None of the assignments of error filed would require us to reverse it.
 

 What chiefly troubles us is whether the practice adopted by the court can be sustained as a substantial compliance with the forms recognized as permissible by the Supreme Court. While it is not in exact compliance with any of them, we have come to the conclusion that it is sufficiently near to the practice sanctioned by the Supreme Court in
 
 Union Trust Co.
 
 v.
 
 Gilpin,
 
 supra, and
 
 O’Boyle v. Kelly,
 
 supra, to warrant us in sustaining the judgments, in the circumstances present in this case, and while we do not recommend its general use or adoption, we can regard it as a substantial compliance with authorized practice, in this case. It is precisely like those cases up to the point where the jury returned the answers to the special questions; and the only difference thereafter is that instead of directing a
 
 *528
 

 verdict
 
 based on those special findings, the court here, by agreement of the parties, made its own findings based on the answers of the jury, and subsequently entered judgment on those findings.
 

 The case was fairly submitted to the jury to make special findings on three separate questions each of which ruled the disposition of the action as respects one of the three policies in suit. And it does seem like sticking in the bark, to require the parties to try the case all over again — after a jury has, in our opinion, already correctly passed upon 'the essential matters involved — solely because of an error in practice, which harmed nobody and to which no objection or exception was then taken by anybody.
 

 As to the competency of the claimant as a witness, which is the chief objection urged against the special finding of the jury, we do not think she is disqualified by section 5(e) of the Act of May 23, 1887, P. L. 158. While the policy insured the life of Graham Fulforth, he had no interest in its proceeds that would descend to his estate, apart from the designation of his executor or administrator as the one entitled to the insurance on his death. The contract was not an endowment policy. It had no cash surrender or loan value or dividend rights when he died and would have had none for four years more.
 

 The plaintiff administratrix was not suing to recover any money due or owing to the insured in his lifetime, which passed to her as his personal representative, but rather was suing as the party designated in the policy to whom the proceeds of the policy should be paid following the insured’s death, unless another beneficiary was designated during his life. He had no interest in the policy subject to attachment execution:
 
 Day v. New England Life Ins. Go.,
 
 111 Pa. 507, 4 A. 748, “While it is his in the sense that his representatives may have it derivatively from him,
 
 their title
 
 to it is peculiar to themselves.” Ibid. p. 511, (italics supplied). The right
 
 *529
 
 sued upon did not come into being until Ms death, and if during his life he evidenced by clear and satisfactory proof, his intention that the proceeds of the policy should be paid to his sister, who had paid all the premiums and for whose reimbursement he had taken out the policy, and to whom he had delivered it to carry out that intention, she is not a witness
 
 adverse
 
 to any right of
 
 the deceased
 
 to or in the policy so as to render her incompetent to testify. See
 
 Madeira’s Est.,
 
 15 W. N. C. 318, 319, affirmed by the Supreme Court
 
 (Appeal of Louis C. Madeira),
 
 17 W. N. C. 202, 1 Sadler 491, 4 A. 908;
 
 Malone's Est.,
 
 8 W. N. C. 179 (Penrose, J.);
 
 Hamill v. Supreme Council,
 
 152 Pa. 537, 542, 25 A. 645;
 
 northwestern Masonic Aid Assn. v. Jones,
 
 154 Pa. 99, 105, 26 A. 253;
 
 Broadrick v. Broadrick,
 
 25 Pa. Superior Ct. 225, 229. It is true that the first two cases arose before the passage of the Act of 1887, supra, but the “Dead Man’s Act” of April 15, 1869, P. L. 30, was in force. See
 
 Karns v. Tanner,
 
 66 Pa. 297.
 

 We do not think that the case of
 
 Gritz v. Gritz,
 
 336 Pa. 161, 7 A. 2d 1, requires us to rule otherwise. In that case, which was a bill in equity brought by a widow against her mother-in-law to have the latter declared a trustee for the former’s benefit of the proceeds of a life insurance policy on her husband’s life, paid the mother as the beneficiary named in the policy, the Supreme Court held that the widow was a competent witness to testify as to the parol trust she was seeking to enforce, stating, by way of argument, that “the wife is not seeking to upset the validity of the naming of the beneficiary, but rather to show that the beneficiary named is a trustee. The estate of the deceased husband could under no circumstances benefit by or be affected whether the trust would or would not be sustained ......Therefore, it is clear that the decedent’s estate would in no way be affected by the testimony offered.” We do not think that this expression should serve to render Mrs. MacKinnon incompetent to testify in the
 
 *530
 
 circumstances here present, where the insured had no interest in the policy, beyond the right to designate who should have the proceeds at his death.
 

 We do not think it necessary to discuss the assignments of error
 
 seriatim.
 
 We have considered them all and find nothing in them amounting to reversible error. A trial court has a right to call the jury’s attention to the weakness of a party’s evidence, provided it leaves the disputed matters of fact to the decision of the jury. We do not think it went beyond permissible limits in this case. The court, which saw and heard the witnesses, felt that the answers of the jury to the questions submitted to them were in accordance with the weight of the evidence, and our review of the testimony and of the exhibits in the case leads us to the same conclusion. The unfortunate conditions which led to the insured’s leaving his wife and family and his closer relations with his sister are referred to in the lower court’s opinion, but do not affect the legal questions involved on the trial.
 

 Judgments affirmed.
 

 [1]
 

 Letters of administration on the estate of Graham Fulforth, deceased, were issued on May 22, 1939 to his widow, Laura Fulforth.
 

 [2]
 

 We shall refer to the policies in the order of their respective dates, rather than as set forth in the statement of claim. The court in its charge followed the order adopted by us.
 

 [3]
 

 We heard the appeal “in forma pauperis” on the original record, and typewritten briefs for the appellant plaintiff.
 

 [4]
 

 “Mr. Shoyer [Counsel for defendant] : May I interject a word? I don’t quite see this procedure. I don’t know that it is right that you should affirm that finding now. Don’t you think the thing to do now would be to merely grant exceptions to counsel whose points you had refused?
 

 “The Court: I reserved them, not refused them before. I am thinking in terms of reserving the point, I have reserved the point submitted.
 

 . “Mr. Shoyer: That is right. That point I overlooked.”
 

 [5]
 

 See 6 Standard Pennsylvania Practice, pp. 176 and 222-224.
 

 [6]
 

 In a criminal case the
 
 Commonwealth
 
 may appeal from a judgment entered by the court for the defendant on a special verdict:
 
 Com. v. Chathams,
 
 50 Pa. 181;
 
 Com. v. Eichelberger,
 
 119 Pa. 254, 13 A. 422.