J-A20016-16

2016 PA Super 303

| | |
|---|---|
| JOHN STAPAS<br><br>                    Appellee<br><br>         v.<br><br>GIANT EAGLE, INC., A PENNSYLVANIA ENTITY; GIANT EAGLE, INC., T/D/B/A GETGO FROM GIANT EAGLE,  A PENNSYLVANIA ENTITY; GIANT EAGLE INC., T/D/B/A SOUTHSIDE GETGO, A PENNSYLVANIA ENTITY; NADEEN MCSHANE, AN INDIVIDUAL; GETGO PARTNERS SOUTH, A PENNSYLVANIA ENTITY; GETGO PARTNERS SOUTH-MARYLAND, LLC, A PENNSYLVANIA ENTITY; AND GETGO HOLDINGS, LLP, A PENNSYLVANIA ENTITY<br><br>                    Appellants | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>No. 1287 WDA 2015 |

Appeal from the Judgment Entered July 24, 2015
In the Court of Common Pleas of Allegheny County
Civil Division at No: GD-09-012965

BEFORE:  BOWES, STABILE, and MUSMANNO, JJ.

OPINION BY STABILE, J.:                    **FILED DECEMBER 23, 2016**

In this case that arises from a shooting outside a GetGo convenience store, Appellants, Giant Eagle, Inc., a Pennsylvania entity; Giant Eagle, Inc., t/d/b/a GetGo from Giant Eagle, a Pennsylvania entity; Giant Eagle Inc., t/d/b/a Southside GetGo, a Pennsylvania entity; Nadeen McShane, an individual; GetGo Partners South, a Pennsylvania entity; GetGo Partners South-Maryland, LLC, a Pennsylvania entity; and GetGo Holdings, LLP, a

Pennsylvania entity (collectively "Giant Eagle"), appeal from the judgment entered on July 24, 2015 in the Court of Common Pleas of Allegheny County on a jury verdict returned in favor of Appellee, John Stapas ("Stapas"). For the reasons that follow, we vacate the judgment entered in the court below and remand for a new trial limited to damages.

In its opinion filed on November 2, 2015, the trial court provided the following procedural history:

> [Stapas] filed negligence claims against [Giant Eagle] seeking damages for injuries Stapas sustained on July 18, 2007 when Stapas was shot multiple times outside of the GetGo convenience store located at 117 S. 18th Street in the Southside of Pittsburgh. Stapas was shot by another patron, Brandon McCallister ("McCallister"), around 1:30 a.m. after the two males engaged in a verbal and physical altercation which began inside the GetGo store and carried outside into the parking lot.
>
> Stapas commenced this action by filing a civil complaint on or about November 10, 2009[1] alleging negligence claims against Giant Eagle and seeking damages for pain and suffering, permanent disability and impairment of earning capacity, diminution of the ability to enjoy life's pleasure, and present and future medical expenses and income loss. There was a five (5) day jury trial which commenced on November 10, 2014 and ended on November 17, 2014.
>
> On November 17, 2014, the jury empaneled in this case returned a verdict finding Giant Eagle 73% negligent and Stapas 27% negligent and awarded Stapas damages totaling

---

[1] Suit was initiated by writ of summons filed on July 16, 2009, within two years of the incident giving rise to this action. Regardless, because Stapas was born on February 1, 1990, the statute of limitations for filing his negligence action was tolled until February 1, 2008, giving him until February 1, 2010 to file his suit. 42 Pa.C.S.A. § 5533(b)(1).

$2,086,000. This [c]ourt entered a verdict in favor of Stapas and against Giant Eagle in the amount of $1,522,780 as molded pursuant to the percentage apportionment of fault directed by the jury. Stapas filed a petition for delay damages on November 26, 2014 pursuant to Pa.R.C.P. 238. On February 25, 2015, this [c]ourt entered an Order adding delay damages in the amount of $279,795.17 to the verdict, for a total award in favor of Stapas in the amount of $1,802,575.17.

On November 26, 2014, Giant Eagle filed a timely motion for post-trial relief pursuant to Pa.R.C.P. 227.1 seeking a new trial and/or [JNOV] and/or a remittitur. This [c]ourt never ruled on Giant Eagle's motion for post-trial relief because oral argument on Giant Eagle's motion was continued generally pending receipt of a complete trial transcript. The complete transcript of proceedings was not filed in this case until July 20, 2015, more than eight (8) months after completion of the trial. On July 24, 2015, after receipt of the complete trial transcript, Stapas filed a praecipe to enter judgment in the amount of $1,802,575.17 representing the molded verdict plus delay damages.[2] On August 21, 2015, Giant Eagle filed a Notice of Appeal to the Superior Court.[3]

Trial Court Opinion, 11/2/15, at 1-2 (unnumbered). The trial court also

provided the following factual background:

Stapas was seventeen (17) years old on the date of the incident and was employed as a busboy and dishwasher [at a Southside restaurant, working 40 hours a week and earning] $8.25 per hour plus approximately $14 to $20 per night in tips. He also

---

[2] More than 120 days elapsed between November 26, 2014 when Giant Eagle filed its motion and July 24, 2015 when judgment was entered on the verdict. Therefore, the post-trial motion was denied by operation of law. **See** Pa. R.C.P. 227.4; ***Morningstar v. Hoban***, 819 A.2d 1191, 1195-96 (Pa. Super. 2003) (citations omitted).

[3] The trial court did not order Giant Eagle to file a Pa.R.A.P. 1925(b) concise statement of matters complained of on appeal.

periodically cleaned the grills at [the restaurant] in the early mornings prior to his shift to earn some extra money.

Prior to the shooting, Stapas would frequently go to the GetGo in Southside after his shift[.] Stapas became casual friends with two of the night shift clerks, Crystal Stogden and LaToya Stevens, over a period of approximately one (1) month prior to the shooting.

Stapas worked [on July 17, 2007 until around midnight, spent time with a friend who was waiting for a bus, and] then walked to the GetGo around 1:25 a.m. on July 18, 2007. Stapas entered the store at 1:26 a.m. and sat and talked to Ms. Stogden while she was making sandwiches behind the counter.[4]

At 1:27 a.m. an unidentified young man entered the store and purchased a few items from Ms. Stogden. After paying for the items, the unidentified young man held the door open for Mr. McCallister to enter the GetGo. McCallister had previously been banned from the GetGo store.[5]

Upon entering the GetGo, McCallister began arguing with Ms. Stogden about being banned from the store. Stapas testified that he had nothing to do with the argument and that he had no prior issues with McCallister. McCallister exhibited signs of intoxication. Stapas stepped toward McCallister in an effort to calm the situation. He said he was concerned about trying to protect the female workers from McCallister. Ms. Stogden also walked around the counter and told McCallister to leave the store and escorted him out the door.

Stapas followed McCallister outside where the situation escalated. Although Giant Eagle has a policy that employees should remain in the store in this type of situation, both workers

---

[4] The transcript reflects that Stapas walked over to the far side of the counter and stood while talking with Ms. Stogden. Notes of Testimony ("N.T."), Trial, 11/10/14, at 167-71.

[5] McCallister was banned from the store for pulling away from a gas pump with the nozzle still attached. As of the date of the incident, the gas pumps had been removed from the store. N.T., 11/10/14, at 210, 249-50.

came outside causing the situation to escalate. McCallister was screaming obscenities at the female workers as they continued to argue with each other. Stapas tried to separate McCallister and the female workers and to calm the situation. There were no security guards working at the store.

Stapas followed McCallister to his vehicle while the two men were arguing and tried to get him to leave. Stapas was concerned that he would be attacked by McCallister and the other male individual who arrived with McCallister. A physical fight ensued between Stapas and McCallister in the parking lot which then escalated to McCallister pulling out a gun and shooting Stapas four (4) times at approximately 1:30 a.m. McCallister had the gun on his person and did not retrieve it from his car.

Stapas was admitted to Mercy Hospital on July 18, 2007 and was discharged on August 4, 2007. Stapas returned to work . . . about two weeks after he was released from the hospital, missing a total of six (6) weeks of work. He continued to work various jobs and eventually attended a class on working in the natural gas industry and is now employed by Patterson-Drilling UTI.

Stapas has scarring from the bullets themselves, and from the surgical procedures necessary to remove the bullets. Stapas also experiences daily stomach pain which is aggravated at his job and when doing strenuous activity. Stapas is regularly concerned about losing his job if he is unable to push through the pain.

*Id.* at 2-4 (unnumbered) (citations to trial transcripts omitted). Our review of the record confirms that the trial court has fairly summarized the procedural history and factual background.

Giant Eagle presents five issues for this Court's consideration:

I.   Whether Giant Eagle properly preserved its right to seek a new trial based on the jury's evident partiality against Giant Eagle and violation of their oaths when they awarded $1.3 million for future wage loss that Stapas conceded he was not entitled to recover?

- 5 -

II.    Whether the jury's evident partiality and violation of their oaths when they awarded $1.3 million for indisputable non-existent future wage loss undermines the entire verdict warranting a new trial for Giant Eagle?

III.   Whether Giant Eagle also is entitled to a new trial because the trial court informed the jury that they must consider Stapas a business invitee to whom the highest duty of care is owed despite ample evidence in the record permitting the jury to find that Stapas was a mere licensee?

IV.    Whether the [t]rial [c]ourt erred in refusing to grant Giant Eagle a mistrial after the jury heard improper evidence regarding (a) Giant Eagle's subsequent remedial measures; (b) Stapas' alleged lack of health insurance; and (c) Stapas' use of a demonstrative exhibit that contained unsupported references to "sexual gestures" allegedly made by the shooter to a Giant Eagle employee before the incident?

V.     Whether Giant Eagle is entitled to JNOV based on Stapas' assumption of the risk of harm resulting from voluntarily leaving the safety of the store to pursue his attacker which, in turn, led to his participation in a fight that he escalated by throwing the first punch?

Appellant's Brief at 5.

As reflected in the issues as presented, Giant Eagle contends the trial court improperly denied its request for a new trial. This Court has recognized:

[T]he standard of review of the denial of a motion for a new trial is not different than the grant of a new trial. *Livelsberger v. Kreider*, 743 A.2d 494 (Pa. Super. 1999).

Our standard of review in denying a motion for a new trial is to decide whether the trial court committed an error of law which controlled the outcome of the case or committed an abuse of discretion. A new trial will be granted on the grounds that the verdict is against the weight of the

- 6 -

evidence where the verdict is so contrary to the evidence it shocks one's sense of justice. An appellant is not entitled to a new trial where the evidence is conflicting and the finder of fact could have decided either way.

*Cangemi ex rel. Estate of Cangemi v. Cone*, 774 A.2d 1262, 1265 (Pa. Super. 2001) (citations omitted). Further, "[i]f the verdict bears a reasonable resemblance to the proven damages, it is not the function of the court to substitute its judgment for the jury's." *Rettger v. UPMC Shadyside*, 991 A.2d 915, 934 (Pa. Super. 2010) (quoting *Kiser v. Schulte*, 648 A.2d 1, 4 (Pa. 1994)). "Nevertheless, where the jury's verdict is so contrary to the evidence as to 'shock one's sense of justice' a new trial should be awarded." *Id.* (quotations omitted).

In *Rettger*, this Court reiterated that "[w]hen faced with . . . uncontroverted evidence, a jury's verdict must bear a reasonable resemblance to the proven damages." *Id.* (quoting *Kiser*, 648 A.2d at 6). Moreover, as our Supreme Court recognized in *Carroll v. Avallone*, 939 A.2d 872 (Pa. 2007):

> The concept of *Kiser*, that the verdict must bear a relation to the evidence, is in tension with the notion that a jury may reject any evidence offered, even if uncontroverted; a jury is not obliged to believe or disbelieve any evidence presented at trial, including an expert's opinion. However, a jury's verdict cannot be based on whim or caprice, hence the holding in *Kiser.*
>
> Thus, if there is no argument or opposition on a particular point, the jury may not be free to disregard such information.

*Id.* at 875.

Because Giant Eagle's first two issues are interrelated, we shall address them together. Giant Eagle asserts that it preserved its right to seek a new trial in its post-trial motion. Giant Eagle further contends it is entitled to a new trial because the jury's award of $1,300,000 for future wage loss was completely unsupported by the record and undermined the entire verdict.

In his closing argument to the jury, counsel for Giant Eagle addressed the issue of wage loss, stating:

> [If you get to the point that you are considering damages,] Giant Eagle would . . . be responsible for whatever wage loss [Stapas] suffered as a result of this, and you heard that he missed approximately six weeks of work and he was making eight to ten dollars an hour at that point in time, and if the math is correct, somewhere between $2,500 and $3,000 which Giant Eagle would say it is responsible for at that point in time.

N.T., 11/17/14, at 804. At the conclusion of Giant Eagle's closing argument, Stapas' counsel addressed the jury. With respect to lost wages, counsel explained:

> [T]o be quite frank with you, the Judge will give you the numbers, but the damage – the easy parts of this are the wages and the past and future medical. You know, the wages are – and I find this difficult to believe, but this kid crawled out of that bed and went back to the job at [the restaurant] to wash dishes six weeks after this shooting. Okay. I think that speaks the world of this kid, because we all know people, especially with litigation involved, that would have laid on the couch till this day and probably would be coming to you people and asking you for a lifetime of wages.
>
> I don't know whether this kid's going to [be] able to keep doing this job. I know with a tenth-grade education he's going to have a hard time finding a job that pays him the twenty-five dollars

an hour he's making now.[6]  But, folks, that is dirty, laborious work.  And his stomach is not holding up well.  Okay.  And whether or not he can put up with this long enough, I don't know.  But he's not sitting here asking you for, you know, 6 – 700,000 in wages for the rest of his life, because he's going to fight through this.

I just hope he's right.  And we spent a lot of time on this, but he better be right, because if he goes down because of his stomach and he can't go up and do a job that involves his hands, he's going to be in more trouble than he is now.  But that's a decision we made.  And the Judge will give you the numbers of the past and present wage loss.  It's small.  It's six weeks of eight or nine dollars an hours, and it's not much.

*Id.* at 836.

In its charge to the jury, the trial court instructed, in relevant part:

If you find that [Giant Eagle] is liable to [Stapas], you must then find an amount of money damages which you believe will fairly and adequately compensate [Stapas] for all the physical and financial injuries he has sustained as a result of the incident. The amount which you award today must compensate [Stapas] completely for damages sustained in the past, as well as damage [Stapas] will sustain in the future.

The damages recoverable by [Stapas] in this case and the items that go to make them up, each of which I will discuss with you separately, are as follows:  A, past and future pain and suffering;  B, embarrassment and humiliation;  C, medical expenses;  D, loss of the enjoyment and pleasure of life; and E, disfigurement.

In the event you find in favor of [Stapas], you will add these sums of damage together and return your verdict in a single lump sum.

---

[6] Stapas testified that he ultimately received his GED.  N.T., 11/10/14, at 86.

*Id.* at 848. For reasons not apparent from the record, the trial court instructed the jury on past and future medical expenses but did not mention wage loss. *Id.* at 848-50.

The jury was presented a verdict slip and was asked to answer six interrogatories, *i.e.*, was Giant Eagle negligent; was Giant Eagle's negligence a factual cause of harm to Stapas; was Stapas negligent; was Stapas' negligence a factual cause of harm; what percentage of causal negligence is attributable to each party; and what damages did Stapas sustain?

> In the sixth interrogatory on the verdict slip, the jury was asked to:
>
> State the amount of damages, if any, sustained by the Plaintiff as a result of the accident (occurrence), without regard to and without reduction by the percentage of causal negligence, if any, that you have attributed to the Plaintiff, including the items listed below. In the event that you find in favor of Plaintiff, you will add the sums of damage together and return your verdict in a single, lump sum.

Jury Verdict Form, Question 6.

Listed below the instructions for Question 6 were five categories of damages followed by the word "Total" and a line for the total amount of damages awarded. The jury completed the form and, despite the fact the only line provided for a number appeared next to the word "Total," handwrote information (appearing below in bolded italics) next to the damages categories as follows:

   a. Scarring       ***liposuction $3000***

   b. Wage loss    ***past $3000, future $1,300,000***

    c. Past and future medical expenses   *past $30,000 future 0*

    d. Past, present and future pain and suffering   *$500,000*

    e. loss of life's pleasures   *$250,000*

Total:  **$2,086,000**

*Id.*

When the jury returned with its verdict, the tipstaff read from the verdict slip.  When the tipstaff came to question six, the following exchange took place:

TIPSTAFF: Question No. 6.  Should I read the whole - -

THE COURT:  Yes.

TIPSTAFF:  Scarring: Liposuction, 3,000.  Wage loss: Past: 3,000.

THE COURT:  Just read the lump sum.

TIPSTAFF:  Okay.  3,000, and future: 1,300,000.  Past and future medical expenses: 30,000 past.  Future, zero.  Past, present and future pain and suffering: 500,000.

THE COURT:  Just the total.

TIPSTAFF:  Total?  I'm sorry.  $2,086,000.  Signed by the jury foreman.

THE COURT:  Any questions?

[COUNSEL FOR GIANT EAGLE]:  Poll the jury, please?

THE COURT:  Poll the jury.  When your number's called, please stand up.

N.T., 11/17/14, at 863.  The tipstaff polled the jurors and each juror indicated the verdict was his or hers.  When the trial court asked if there

were any questions, counsel for Giant Eagle responded, "None." *Id.* at 864. The trial court directed some closing remarks to the jury, thanked them, and dismissed them. *Id.* at 865-66.

In its first issue, Giant Eagle contends it properly preserved its right to seek a new trial based on the jury's partiality, evidenced by its lost wages award. In its November 2, 2015 opinion, the trial court determined the issue was waived for failure to raise it prior to dismissal of the jury. Trial Court Opinion, 11/2/15, at 5. The trial court explained:

> [T]his case was submitted to the jury for a general verdict. The jury verdict slip was drafted by and agreed to by counsel for all parties, including counsel for Giant Eagle. The verdict sheet jointly submitted by the parties was given to the jury without objection by any party's counsel, including counsel for Giant Eagle. The jury returned a general verdict in favor of Stapas and against Giant Eagle in the amount of $2,086,000, which was later molded by this [c]ourt pursuant to the percentage apportionment of fault directed by the jury. Since Giant Eagle agreed to submit this case to a jury for a general verdict, it cannot itemize and attack certain components of the jury's award.
>
> [I]n attacking the jury's award, Giant Eagle relies on handwritten notations in the margin of the jury slip as a basis for arguing that certain components of the damage award were inappropriate. By failing to raise this objection before the jury panel was dismissed, however, Giant Eagle waived the issue. *See Picca v. Kriner*, 645 A.2d 868, 871 (Pa. 1994).
>
> When the jury returned its verdict, counsel for Giant Eagle did not assert that the jury's damage award was improper, did not request the jury be sent back for further deliberations on the issue, and made no objection of any kind to the verdict. Giant Eagle instead polled the jury and the jury was dismissed. If counsel for Giant Eagle had raised an objection at the time the jury slip was read, this [c]ourt could have asked the jury to clarify its verdict, including its handwritten notations in the

margin. Since the jury was dismissed without inquiry, this [c]ourt cannot speculate as to what the jury intended, and this [c]ourt would have accepted the total damage award as a general verdict in favor of Stapas. The jury's verdict . . . bears a reasonable relation to Stapas' proven damages. Stapas was fully compensated for his past medical expenses and lost wages, and for past and future pain and suffering as well as scarring and loss of life's pleasures. As such, the jury award should stand.

*Id.* at 5-6.

The trial court categorized the verdict as a "general verdict." *Id.* at 5. Giant Eagle counters that the verdict was a "special verdict." Appellant's Brief at 14. In fact, the verdict was a general verdict with special findings. As our Supreme Court explained in *Fritz v. Wright*, 907 A.2d 1083 (Pa. 2006):

In Pennsylvania, verdicts may be general, special, or general with special findings.[fn] *See Fulforth v. Prudential Ins. Co. of Amer.*, 147 Pa. Super. 516, 24 A.2d 749 (1942). A general verdict is a finding by the jury in terms of the issue or issues referred to them and is, either wholly or in part, for the plaintiff or for the defendant. *Id.* at 753; *see also* Black's Law Dictionary (8th ed. 2004) (defining general verdict as a verdict "by which the jury finds in favor of one party or the other"). Thus, when a trial judge requires only a general verdict slip, a jury will be call upon only to find "for plaintiff in the amount of . . ." or "for defendant." No other substance will appear on the general verdict slip.

In contrast, when the trial court exercises its discretion to employ a general verdict with special findings . . . , the analytical subparts of the jury's process will be set forth in individual questions to be answered by the jury, and the answers thereto are always given in connection with the ultimate general verdict. *See Fulforth*, 24 A.2d at 753[.] . . . [S]hould the jury arrive at the last question, the slip's "bottom line" looks akin to the general verdict slip in that the amount of damages awarded to the plaintiff are specified.

<sup>fn</sup> A special verdict, which is not implicated in this case, is one in which the jury finds all material facts in the case, leaving the ultimate decision of the case on those facts to the court. *See . . . Fulforth*, 24 A.2d at 753[.]

*Id.* at 1091-92 (some internal citations and footnote omitted). Further, "when special findings are employed in connection with a general verdict, the jury's decision is the general verdict, not the answers to the individual interrogatories[.]" *Id.* at 1092. "[I]n the usual case *where special findings are consistent with the general verdict*, the special findings are considered merely advisory." *Id.* (citation omitted) (emphasis added).

Here, the jury was directed to provide one lump sum indicating the total damages awarded to Stapas. However, the jury instead assigned an award of damages to each category listed on the verdict slip and took the liberty of awarding $1.3 million for lost wages despite Stapas' concession that he was not seeking damages for future lost wages and despite a complete lack of evidence to support such an award.

The trial court suggested that if counsel had objected when the verdict slip was read, the court "could have asked the jury to clarify its verdict, including its handwritten notations in the margin." Trial Court Opinion, 11/2/15, at 5. Because the jury was dismissed without inquiry into the notations on the verdict slip, the trial court determined the issue was waived. *Id.* The trial court explained it could not "speculate as to what the jury intended; and this [c]ourt would have accepted the total damage award as a general verdict in favor of Stapas." *Id.*

- 14 -

The trial court cites *Picca v. Kriner*, 645 A.2d 868, 871 (Pa. 1994), as authority for concluding Giant Eagle's issue was waived for lack of objection before the jury was dismissed. As our Supreme Court noted in *Criswell v. King*, 834 A.2d 505 (Pa. 2003), *Picca* held that a plaintiff who fails to object to an ambiguous or flawed jury verdict before the jury is dismissed waives the right to challenge the verdict in post-trial motions. *Id.* at 508. The Supreme Court expressed its agreement with post-*Picca* decisions rendered by this Court[7] recognizing "that a claim challenging the weight of evidence is not the type of claim that must be raised before the jury is discharged. Rather, it is a claim which, by definition, ripens only after the verdict, and it is properly preserved so long as it is raised in post-verdict motions." *Id.* at 512. The Court concluded:

> We reaffirm that which was recognized in [*City of Philadelphia, Police Dept. v. Gray*, 633 A.2d 1090 (Pa. 1993)], *i.e.,* that an inconsistent verdict provides grounds for objection and, if a party seeks relief upon grounds of verdict inconsistency, it must forward a timely, contemporaneous objection upon the rendering of the verdict. But a claim of verdict inconsistency is not the same complaint as a claim sounding in evidentiary weight. A

---

[7] *Id.* at 511 (citing, *inter alia*, *Hobbs v. Ryce*, 769 A.2d 469, 472 n. 3 (Pa. Super. 2001); *King v. Pulaski*, 710 A.2d 1200, 1204 (Pa. Super. 1998); *Lewis v. Evans*, 690 A.2d 291, 293 (Pa. Super. 1997); *Rozanc v. Urbany*, 664 A.2d 619, 621-222 (Pa. Super. 1995) (*Picca* waiver rule inapplicable where post-trial claim is not that the jury verdict was ambiguous or flawed, but rather, that it was "contrary to the evidence admitted at trial") (post-trial motion alone is sufficient to preserve a claim that the verdict is against the weight of the evidence where the verdict is not inconsistent or ambiguous and/or where an objection and instruction to the jury would not have eliminated the need for a new trial)).

- 15 -

verdict may be perfectly consistent and yet be a shock to the losing party, as well as a shock to the conscience of the jurist who oversaw the presentation of evidence. Verdict-related claims arising from perceived evidentiary weight cannot be addressed and averted by resubmission to the same jury. Since the complaint cannot be redressed by the jury, there is no reason, under the principles animating [*Dilliplaine v. Lehigh Valley Trust Co.*, 322 A.2d 114 (Pa. 1974)] and its progeny, to require an objection before the jury is discharged. Nor should a party be forced to litigate a claim of verdict inconsistency when in fact its true complaint sounds in evidentiary weight.

*Id.* at 513. As in *Criswell*, Giant Eagle did not assert that the jury's verdict was inconsistent or ambiguous. Rather, Giant Eagle—like Criswell—filed a timely post-verdict motion requesting a new trial because the jury's damages award "is not supported by sufficient competent evidence of record, is against the weight of the evidence, is arbitrary, excessive and so contrary to the evidence as to shock one's sense of justice, and no two reasonable minds could fail to agree that the award of future wage loss was improper." Giant Eagle's Motion for Post-Trial Relief, 11/26/14, at 1. "Since this request was, by definition, one which ripens only at the post-verdict stage, . . . it was properly forwarded for the first time in a timely-filed post-trial motion. *See* Pa. R.C.P. 227.1(b)." *Crisswell*, 834 A.2d at 513. We find that Giant Eagle properly preserved its right to seek a new trial by filing a timely post-trial motion contending the verdict was against the weight of the evidence and shocked one's sense of justice.

The trial court suggests that the verdict "bears a reasonable relation to Stapas' proven damages." Trial Court Opinion, 11/2/15, at 6. We cannot

- 16 -

agree. It is not lost on us that had the jury followed the trial court's instructions and returned a single sum verdict, we would not be able to discern whether the jury awarded any part of that sum for future lost wages. However, that is not the case. As reflected on the record, the jury clearly allocated $1,300,000 for future lost wages that were unsupported by the evidence and were specifically disclaimed by Stapas' counsel. Although Lady Justice is blindfolded, we will not don blinders to pretend the jury was within its rights to award damages that were neither sought nor proven. Again, our Supreme Court instructed that "where special findings are consistent with the general verdict, the special findings are considered merely advisory." **Fritz**, 907 A.2d at 1092. Here, unwittingly or not, the jury provided special findings that revealed the special finding awarding future lost wages was unsupported by the evidence presented at trial and, therefore, inconsistent with the general verdict. Under these circumstances, the special findings compel us to conclude that the verdict was against the weight of the evidence and that the trial court abused its discretion by not granting Giant Eagle a new trial. **See Kiser**, 648 A.2d at 3-4. Therefore, because Giant Eagle preserved its challenge to the weight of the evidence in its post-trial motion and because the award of future lost wages was completely unsupported by the evidence, we vacate the judgment entered on the verdict and award a new trial.

Having determined that the judgment must be vacated, we next consider whether Giant Eagle is entitled to a new trial generally or one limited to the issue of damages. Our Supreme Court has explained:

The granting of a new trial limited to damages was not permitted under the common law. However, Pennsylvania and most other jurisdictions have adopted a rule permitting such limited new trials under certain specific circumstances. A new trial limited to the issue of damages will be granted where: (1) the issue of damages is not intertwined with the issue of liability; and (2) where the issue of liability has been fairly determined or is free from doubt.

*Kiser*, 648 A.2d at 7-8 (citations and quotation marks omitted).

In *Banohashim v. R.S. Enterprises, LLC*, 77 A.3d 14 (Pa. Super. 2014), this Court noted:

We have held that liability is "fairly determined" when "the court is convinced upon a review of the whole case that the jury [has] settled the issue as to responsibility fairly and upon sufficient evidence—so that dissociated from the other questions it ought to stand as the final adjudication of the rights of the parties." *Lambert v. PBI Indus.*, 244 Pa. Super. 118, 366 A.2d 944, 956–957 (1976) (*en banc*) (quoting 58 Am.Jur.2d New Trial, § 27 (1971)).

*Id.* at 23 (brackets omitted). Therefore, while we are charged with reviewing the entire case, we shall specifically address Giant Eagle's remaining issues as part of that review and shall do so in the context of determining whether Giant Eagle's liability has been "fairly determined."

In its third issue, Giant Eagle contends the trial court erred as a matter of law by instructing the jury that Stapas was a business invitee. Giant Eagle contends there was sufficient evidence to support a finding that Stapas

was a licensee to whom Giant Eagle owed a lesser duty of care. As this

Court has recognized:

> It is well-settled that "[t]he duty of a possessor of land toward a third party entering the land depends upon whether the entrant is a trespasser, licensee, or invitee." **Updyke v. BP Oil Co.**, 717 A.2d 546, 549 (Pa. Super. 1998) (citation omitted). Generally, the determination of an entrant's legal classification is one of fact for the jury. **Palange v. City of Philadelphia, Law Dept.**, 433 Pa. Super. 373, 640 A.2d 1305, 1307 (1994), *appeal denied*, **Palange v. Priori's Bar & Restaurant**, 542 Pa. 649, 666 A.2d 1057 (1995). "Where the evidence is insufficient to support an issue, however, it may be appropriate for the court to remove that issue from the jury." **Id.** (citation omitted).

**Cresswell v. End**, 831 A.2d 673, 675 (Pa. Super. 2003) (footnote omitted).

Further:

> The distinction between invitation and permission forms the basis for distinguishing an invitee from a licensee.
>
> > Although invitation does not in itself establish the status of an invitee, it is essential to it. An invitation differs from mere permission in this: an invitation is conduct which justifies others in believing that the possessor *desires* them to enter the land; permission is conduct justifying others in believing that the possessor is *willing* that they shall enter if *they so desire.*
>
> Restatement (Second) of Torts § 332 cmt. b (1965) (cited with approval in **Palange**, 640 A.2d at 1308).

**Id.** at 676 (emphasis in original). Licensees include three types of persons:

> 1. One whose presence upon the land is solely for his own purposes, in which the possessor has no interest, and to whom the privilege of entering is extended as a mere personal favor to the individual, whether by express or tacit consent or as a matter of general or local custom.

2. The members of the possessor's household, except boarders or paying guests and servants, who, as stated in § 332, Comments *i* and *j*, are invitees.

3. Social guests. . . .

Restatement (Second) of Torts § 330 cmt h (1965).

Giant Eagle argues that the record is "replete with evidence the jury should have been permitted to consider to determine whether Stapas was a licensee." Appellants' Brief at 26. In support of its position, Giant Eagle suggests that Stapas was a licensee who visited the GetGo to socialize with the store clerks. Giant Eagle contends Stapas had a romantic interest in one of the clerks and his conduct immediately preceding the shooting consisted solely of conversing with a clerk rather than making a purchase. Giant Eagle also claims support in the surveillance video footage from the minutes before the shooting that shows Stapas leaning on the counter talking with the clerk while she was working. *Id.*

The cited instances are not reflective of the testimony generally and, in fact, they skew it. Stapas acknowledged he had been to GetGo many times before the night of the shooting and "would go talk with [the clerks], **get my stuff, my pop and cigarettes**." N.T. Trial, 11/10/14, at 169 (emphasis added). When asked if he would sometimes "go and hang out and just talk to them," Stapas responded, "Yeah." *Id.* However, on the night of the shooting, he "**was there to shop**. I stopped and talked before I bought anything." *Id.* at 185 (emphasis added). He never got to the point

of buying anything on the night in question but went there with that intent. *Id.* at 192. Based on the surveillance video, Stapas was in the GetGo for only two minutes before McCallister entered the store. The shooting occurred approximately two minutes later.

The testimony supports the conclusion that Stapas was at the GetGo on the night of the shooting as an invitee, *i.e.*, as a customer that Giant Eagle desired to enter the land for the purpose of buying goods, not as a licensee Giant Eagle was willing to permit on the premises if Stapas so desired. *See* Restatement (Second) of Torts § 330 cmt h (1965) and § 332 cmt b (1965). As the trial court recognized:

> Stapas entered the GetGo that night, the same way he had done many times before, with the intent of purchasing items. This is the very purpose for which the GetGo is held open to the public. The fact that Stapas was socializing for a few minutes with the night time clerks prior to making a purchase, people he knew by virtue of his past visits to the GetGo as a business invitee, does not change his status. There is simply no evidence of record that would support a finding that Stapas was anything but a business invitee and, thus, this [c]ourt properly refused to instruct the jury on the duty owed to a licensee.

Trial Court Opinion, 11/2/14, at 6-7.

We find no error in the trial court's determination that Stapas was an invitee and for removing that issue from the jury. Again, "[w]here the evidence is insufficient to support an issue, [] it may be appropriate for the court to remove that issue from the jury." *Palange,* 640 A.2d at 1307. In *Palange*, this Court determined that the trial court did not err in charging the jury only on the duty owed to a licensee in a slip and fall case where the

appellant used a sidewalk in front of a restaurant for her own purpose and the restaurant neither encouraged nor desired such use. *Id.* at 1309. *See also Updyke*, 717 A.2d at 549-50 (Pa. Super. 1998) (trial court did not err charging jury that woman was a public invitee rather than a licensee when she entered a combination gas station and convenience store to use a phone after her car broke down); *Juszczyzyn v. Taiwo*, 113 A.3d 853, 856-58 (Pa. Super. 2015) (trial court did not err in determining police officer was a licensee when assaulted by a lounge patron while responding to a disturbance call); *Cresswell*, 831 A.2d at 677 (trial court did not err in deciding as a matter of law that meter reader was a licensee when she fell on the appellee's property because meter reader was privileged to enter property only by virtue of appellee's permission and evidence was insufficient to support a finding meter reader was an invitee). Giant Eagle's third issue fails.

In its fourth issue, Giant Eagle asserts the trial court erred by refusing to grant its mistrial requests regarding testimony elicited as a result of tactics employed by Stapas' counsel in three subject areas. They include subsequent remedial measures, Stapas' alleged lack of health insurance, and a demonstrative exhibit containing unsupported references to "sexual gestures" made by the shooter to the GetGo clerks before the shooting. Our standard for reviewing a trial court's denial of a mistrial is abuse of

discretion. ***Commonwealth v. Lopez***, 57 A.3d 74, 83 (Pa. Super. 2012) (citation omitted).

> A mistrial is necessary only when the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict. A mistrial is inappropriate where cautionary instructions are sufficient to overcome any potential prejudice.

***Id.*** at 83-84 (citations and quotations omitted). To the extent Giant Eagle challenges the trial court's evidentiary rulings, this Court has recognized:

> [O]ur standard of review of a trial court's decision to admit or exclude evidence is well-settled. When we review a trial court ruling on admission of evidence, we must acknowledge that decisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law. In addition, for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.

***Stumpf v. Nye***, 950 A.2d 1032, 1035-36 (Pa. Super. 2008) (citation and quotations omitted). "A party suffers prejudice when the trial court's error could have affected the verdict." ***Schuenemann v. Dreemz, LLC***, 34 A.3d 94, 101 (Pa. Super. 2011) (citation omitted).

The trial court rejected Giant Eagle's assertions regarding the challenged testimony, stating:

> While improper remarks or tactics by counsel may sometimes warrant granting a new trial, this [c]ourt does not believe the tactics utilized by [Stapas'] counsel in this case rise to such

level. When considered in context, the [c]ourt did not find counsel['s] remarks or tactics to be impermissible or beyond the scope of legitimate examination. Counsel's remarks did not unduly appeal to the prejudice and sentiments of the jury and, even if they did, any possible error was cured when this [c]ourt instructed the jury not to allow sympathy or prejudice to play any part in their deliberations. The jury charge in this case was sufficient, under the circumstances, to cure any possible error.

Trial Court Opinion, 11/2/14, at 8. We agree with the trial court's conclusions that the testimony, evidence, and "tactics" in question did not warrant a new trial and were not harmful or prejudicial to Giant Eagle.

Specifically, Giant Eagle's first two claims regarding subsequent remedial measures relate to an acknowledgement that Giant Eagle placed a security guard in the store and created a safety committee after the incident. Pennsylvania Rule of Evidence 407 (Subsequent Remedial Measures) provides:

When, after an event, measures are taken by a party that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measure is not admissible against that party to prove:

· negligence;

· culpable conduct;

· a defect in a product of its design; or

· a need for a warning or instruction.

But the court may admit this evidence for another purpose such as impeachment or – if disputed – providing ownership, control, or the feasibility of the precautionary measure.

Pa.R.E. 407.

With regard to placing a security guard in the store, it is important to note that Giant Eagle's counsel objected to the question. At a sidebar discussion, the trial court sustained the objection and granted Giant Eagle's motion to strike. *See* N.T., 11/10/14, at 223-24. Giant Eagle did not further request an instruction for the jury to disregard the question and no instruction was given. We find neither abuse of discretion nor error of law with respect to the trial court's ruling.

Regarding the formation of a safety committee, the exchange in question took place on direct examination by Stapas' counsel of a GetGo supervisor called as a plaintiff's witness as follows:

> QUESTION: Unrelated to this accident, you developed a safety committee later on in the years. Is that fair?
>
> ANSWER: Yes.
>
> QUESTION: That didn't exist in '07?
>
> ANSWER: They always had safety newsletters. I don't know what years they were developed.
>
> QUESTION: I said "safety committee."
>
> ANSWER: Yeah, that's part of the - -
>
> > Counsel for Giant Eagle: Objection, Your Honor. Subsequent.
> >
> > Stapas' Counsel: It's unrelated to this, Judge. They say they didn't do anything.
> >
> > The Court: (Indicating.)
> >
> > Stapas' Counsel: Okay. One moment, Your Honor.

N.T., 11/12/14, at 434.

There was no further questioning about a safety committee and it is not even clear whether or not there was a safety committee in 2007. Further, as the quoted excerpt reflects, the trial court did not rule on the objection raised by Giant Eagle's counsel and counsel did not move to strike or renew his objection before Stapas' counsel moved on to another subject. Nor did Giant Eagle's counsel request a curative instruction or mistrial relating to the issue of a safety committee. Therefore, there is no ruling for us to review.[8]

The third contested "subsequent remedial measures" issue stems from re-direct examination of the Giant Eagle supervisor by Stapas' counsel. Counsel asked what the supervisor did in response to the shooting. *Id.*, 11/13/14, at 502. The supervisor replied that she trains workers to be calm, not follow people into the parking lot, not get loud, and not aggravate a situation. *Id.* at 502-03. When asked if nothing had changed since the shooting, counsel for Giant Eagle interjected, "Wait. Let -- " The trial judge instructed, "Answer, ma'am." *Id.* at 503. The supervisor gave an answer that can best be described as equivocal, stating, "I do what I did now and

_____

[8] Stapas suggests that the transcript's reference to the trial court "indicating," might mean that the trial court gestured for counsel "to move along." Appellee's Brief at 50. We will not speculate as to the meaning of "indicating." However, it is clear that Stapas' counsel moved on to another area of questioning.

then, yes." *Id.* The re-direct examination continued and counsel for Giant Eagle never registered an objection. *Id.* at 503-505. In light of the lack of objection, no issue was raised before the trial court. Therefore, we will not entertain it on appeal. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); *see Agostinelli v. Edwards*, 98 A.3d 695, 700 (Pa. Super. 2014). We find no basis for relief based on any of Giant Eagle's remedial measures arguments.[9]

Giant Eagle next alleges the trial court erred by denying his request for a mistrial after Stapas' counsel elicited evidence regarding Stapas' lack of medical insurance. The only reference to insurance came in response to a question on direct examination when Stapas was asked, "After you got out of the hospital, you didn't seek much treatment, did you?" N.T., 11/10/14, at 146. Stapas responded that he did not seek much treatment "[b]ecause, I mean, by the time I came close, I didn't have any insurance." *Id.* Counsel for Giant Eagle objected and the trial court directed the response be stricken. During sidebar discussion at the conclusion of direct examination, Giant Eagle's counsel moved for a mistrial. *Id.* at 155-56. The trial court noted that the response had been stricken and discussed the possibility of giving an instruction to the jury but did not make a decision at that point, noting that "if it would happen to happen again, but hopefully it will not, but

---

[9] We note Giant Eagle's counsel did not request a mistrial in relation to any of the subsequent remedial measures issues challenged in this appeal.

if it does, that's another story.  Okay." *Id.* at 157.  Counsel for Giant Eagle

responded, "Okay." *Id.*

In *Gatto v. Kisloff*, 649 A.2d 996 (Pa. Super. 1994), this Court

observed:

> The general rule is that evidence of insurance is irrelevant and prejudicial and the presentation of such evidence justifies the grant of a mistrial.  The mere mention of the word "insurance", by itself, however, does not necessitate a new trial.  Instead, there must be an indication that the party moving for a new trial was prejudiced in some way by the mention of the word "insurance."

*Id.* at 998-99 (citations omitted).

We agree with Stapas that the prohibition against the mention of

insurance generally applies to a defendant's possession of liability insurance.

*See* Pa.R.E. 411.  We cannot agree with Giant Eagle's contention that

Stapas' alleged inability to pay for medical treatment was prejudicial to Giant

Eagle.  There was no suggestion that Stapas did not receive treatment

necessary for his recovery and the jury was instructed that Stapas was

entitled to recover his medical expenses from Giant Eagle if the jury found

Giant Eagle casually negligent for his injuries.  If anything, if Stapas had

medical insurance, indicating so would have been prejudicial to Stapas, not

Giant Eagle.  However, Stapas testified he had no medical insurance and the

jury was instructed that he was entitled to recover medical expenses, which

the jury awarded.  Further, Giant Eagle's counsel acknowledged he was

agreeable to the trial court's "wait and see" approach, indicating a curative

instruction could be given if the issue of insurance came up again. It did not, and counsel did not request an instruction. To the extent Giant Eagle suggests counsel was appealing to the jury's emotions by soliciting information about Stapas' lack of medical insurance, the trial court instructed the jury that it was not to be influenced by anything other than the law and the evidence of the case. N.T., 11/17/14, at 861. Accordingly, we find no basis for relief relating to the mention of Stapas' lack of medical insurance.

Giant Eagle also contends the trial court erred by denying his mistrial request and allowing Stapas' counsel to use a demonstrative exhibit that contained "unsupported references to sexual gestures" made by the shooter to one of the GetGo clerks before the shooting. While it is clear the clerk did not testify that McCallister made sexual gestures to her, it is equally clear that she testified that he was rude, disrespectful and called her names. N.T., 11/13/14, at 274, 283. Further, when counsel for Giant Eagle objected to the reference to "sexual gestures" in the exhibit, the trial court ordered Stapas' counsel to strike those references from the exhibit. *Id.* at 342. We cannot agree that the passing reference to a "rude" and "disrespectful" name-calling non-party's "sexual gestures" resulted in any prejudice to Giant Eagle. *Cf. Poust v. Hylton*, 940 A.2d 380 (Pa Super. 2007) (violation of pre-trial order precluding counsel from using the word "cocaine" with respect to a decedent resulted in prejudice warranting a new trial).

We find neither abuse of discretion nor misapplication of law in the evidentiary rulings made by the trial court or in denying Giant Eagle's motions for mistrial, to the extent those motions were made. Further, we find no resulting harm or prejudice to Giant Eagle. Giant Eagle's fourth issue fails.

In its fifth and final issue, Giant Eagle contends it was entitled to a JNOV based on Stapas' assumption of risk. We cannot agree.

This Court's standard of review of a trial court's denial of JNOV is as follows:

> Appellate review of a denial of JNOV is quite narrow. We may reverse only in the event the trial court abused its discretion or committed an error of law that controlled the outcome of the case. Abuse of discretion occurs if the trial court renders a judgment that is manifestly unreasonable, arbitrary or capricious; that fails to apply the law; or that is motivated by partiality, prejudice, bias or ill will.
>
> When reviewing an appeal from the denial of a request for JNOV, the appellate court must view the evidence in the light most favorable to the verdict-winner and give him or her the benefit of every reasonable inference arising therefrom while rejecting all unfavorable testimony and inferences. . . . Thus, the grant of JNOV should only be entered in a clear case and any doubts must be resolved in favor of the verdict-winner[.]

***Sears, Roebuck & Co. v. 69th Street Retail Mall, L.P.***, 126 A.3d 959, 967 (Pa. Super. 2015) (citations, quotation marks and brackets omitted).

We first note Giant Eagle's argument that the case "should have ended with a nonsuit because no reasonable jury could have found against Giant Eagle given the undisputed evidence establishing that Stapas pursued

McCallister and assumed the risk of confronting and fighting him." Appellants' Brief at 36. However, the record reveals that at the close of Stapas' case, his counsel moved for a directed verdict as to Giant Eagle's negligence based on the testimony that Giant Eagle never "responded to the Brandon McCallister incident." N.T., 11/14/14, at 643. Counsel for Giant Eagle responded:

> We would obviously deny that. I was going to move for a nonsuit on behalf of Giant Eagle due to they haven't established any link between what happened and the shooting in question. However, the evidence in this case is such that there were responses by Giant Eagle to the incidents, and it would be inappropriate at this point in time to make any ruling in favor of [Stapas].

*Id.* The trial court responded, "Both denied." *Id.* No other argument took place relating to a motion for nonsuit and there is no indication on the record that assumption of risk was even the basis of Giant Eagle's nonsuit request.

Giant Eagle is correct in recognizing that assumption of risk, while oft-challenged, remains a viable defense "when a plaintiff voluntarily proceeds to encounter a known risk." Appellants' Brief at 37 (citing ***Howell v. Clyde***, 620 A.2d 1107, 1110 (Pa. 1993) (plurality)).[10] In ***Carrender v. Fitterer***, 469 A.2d 120 (Pa. 1983), our Supreme Court held:

---

[10] In its reply brief, Giant Eagle cites an unpublished memorandum opinion of this Court in support of its contention that the demise of assumption of risk in Pennsylvania has been greatly exaggerated. Appellants' Reply Brief at 22 n. 7. Had this been the only instance of Giant Eagle's violation of the prohibition against relying upon or citing an unpublished memoranda

*(Footnote Continued Next Page)*

> A danger is deemed to be "obvious" when "both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising normal perception, intelligence, and judgment." Restatement [(Second of Torts] § 343A comment b. For a danger to be "known," it must "not only be known to exist, but . . . also be recognized that it is dangerous and the probability and gravity of the threatened harm must be appreciated." *Id.* Although the question of whether a danger was known or obvious is usually a question of fact for the jury, the question may be decided by the court where reasonable minds could not differ as to the conclusion. *See* Restatement, *supra*, § 328B comments c and d.

*Id.* at 123-24.

Giant Eagle contends that no reasonable minds could disagree that Stapas assumed the risk of being injured when he pursued and fought McCallister. Appellants' Brief at 38. We cannot agree. As Stapas asserts, there is no evidence Stapas was aware McCallister had a gun. Appellee's Brief at 57. Moreover, while characterized as a rude, disrespectful name-caller, there was no evidence of prior violent acts on McCallister's part or any history of bad words or bad feelings between Stapas and McCallister before the night of the shooting. N.T., 11/10/14, at 101-04. Therefore, Stapas could not be said to have voluntarily encountered a known risk.

---

*(Footnote Continued)*

decision of this Court, *see* 210 Pa. Code § 65.37, we might have chosen not to mention it. However, because it is one of three unpublished decisions relied upon or cited in Giant Eagle's reply brief, we remind practitioners to refrain from future instances of citation to unpublished memoranda decisions.

Based on our review of the entire case, including a review of Giant Eagle's issues challenging liability, we are convinced that liability—attributing 73% to Giant Eagle and 27% to Stapas—has been "fairly determined," *i.e.*, that the jury has "settled the issue as to responsibility fairly and upon sufficient evidence—so that dissociated from the other questions it ought to stand as the final adjudication of the rights of the parties." ***Banohashim***, 77 A.3d at 23 (citations omitted). Further, we find, as did our Supreme Court in ***Kiser***, that the issue of damages here is not intertwined with the issue of liability. Giant Eagle had a "fair opportunity to litigate the issues of negligence and contributory negligence[.]" ***Kiser***, 648 A.2d at 8. The jury found Giant Eagle negligent and Stapas contributorily negligent and apportioned causal negligence accordingly. With regard to liability, we find the jury's decision was unambiguous and "free from doubt." ***Id.*** Therefore, we find that Giant Eagle is entitled to a new trial limited to damages only.

Judgment vacated. Case remanded for further proceedings consistent with this Opinion. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/23/2016